**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ROSS CAMPBELL,**

**Petitioner,**

**- against -**

**MARK MILLER,**

**Respondent.**

**25-cv-6001 (JGK)**

**Order**

**John G. Koeltl, District Judge:**

The Court received the attached letter and submission from the petitioner, which it now forwards to the respondent.

**SO ORDERED.**

**Dated:** **New York, New York**
**September 1, 2026**

**/s/ John G. Koeltl**
**John G. Koeltl**
**United States District Judge**

ROSS CAMPBELL
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582

8/13/26

Hon. John G. Koeltl, USDJ
CLERK OF COURT
United States District Court
Southern District of New York
U.S. Courthouse
500 Pearl Street
New York, NY 10007

25-cv-6001 (JGK)
Re: Campbell v. Miller

Your Honor:

I hope that this letter finds you well. Enclosed is my Reply to the State's Answer and Memorandum of Law in Opposition to my Petition for Writ of Habeas Corpus.

Please be advised, I haven't sent the Respondent a copy, only because the copier machine broke. So I respectfully request that the Court forward it to them. I had every intention of doing so, but again the copier is broke. For what it's worth I don't have a copy for myself.

Well, thank you Your Honor for the extensions. Also enclosed are documents concerning Coram Nobis exhaustion. I didn't know how exactly to present them to you, but they are here for your review.

Thank you in advance for your time, energy and consideration. With all good wishes,

Gratefully yours,

Ross Campbell

United States District Court

SOUTHERN DISTRICT OF NEW YORK

25-cv-6001 (JGK)

ROSS CAMPBELL,

Petitioner,

-against-

MARK MILLER,

Respondent.

# PETITIONER'S REPLY

To the State's Answer and Memorandum of Law

Opposing Petitioner's Petition For a

Writ of Habeas Corpus

ROSS CAMPBELL,
Petitioner, pro se
594 Route 216
Stormville, NY 12582

August 13, 2026.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSS CAMPBELL,<br>Petitioner,<br>-against-<br>MARK MILLER,<br>Respondent. | 25-cv-6001 (JGK)<br>REPLY |

PETITIONER'S REPLY TO THE STATE'S ANSWER AND MEMORANDUM OF LAW OPPOSING PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS

## QUESTIONS PRESENTED

1. Whether the state court unreasonably applied clearly established Supreme Court precedent, including Strickland v. Washington, Wiggins v. Smith, and Rompilla v. Beard, within the meaning of 28 U.S.C. §2254(d), by according strategic deference to counsel's decision to seat a juror who disclosed experiences directly related to the charged sexual allegations, expressed difficulty serving, and requested further inquiry, where Petitioner contends the contemporaneous record did not provide the factual foundation necessary to support an informed professional judgment. Independent of that record development question, whether counsel's own stated basis for that decision, resting on counsel's personal view that the juror was fabricating her disclosure because didn't believe date or marital rape occurred, further undermines reasonableness of the state court's Strickland analysis. Miller v. Webb is cited only as persuasive illustration, not as clearly established federal law under §2254(d)(1).

2. Whether the state court reasonably applied Strickland by treating counsel's handling of testimonial accusation evidence from a non-testifying complainant as constitutionally sufficient professional judgment where the accusation remained before the jury without testimony from the declarant and without the protections guaranteed by the Confrontation Clause.

3. Whether Strickland prejudice, for any deficient performance independently established under Grounds One and Two, must be assessed against the totality of the evidence before the jury. And, whether the practical interaction of multiple independently established deficiencies may bear on the reasonable probability inquiry without creating a freestanding cumulative error claim.

4. Whether admission of testimonial accusation evidence from a non-testifying complainant violated Crawford v. Washington. And, whether, although the Appellate Division found this claim unpreserved, Petitioner establishes cause and prejudice sufficient to excuse that default under Coeleman v. Thompson and Murray v. Carrier; whether the state court's harmless error determination was unreasonable under Chapman v. California and 28 U.S.C. §2254(d); and, whether the constitutional error had a substantial and injurious effect under Brecht v. Abrahamson.

## PRELIMINARY STATEMENT

Repsondent's Answer and Memorandum of Law principally relies upon the state court's adjudications and argues that Petitioner's claims do not satisfy the demanding standard for federal habeas relief established by 28 U.S.C. §2254(d).

Petitioner recognizes that federal habeas review is intentionally limited, and that this Court doesn't sit to correct ordinary errors of state law or to reconsider a criminal trial de novo. Rather, the Court seeks to determine whether the state court adjudications involved an unreasonable application of clearly

established Supreme Court precedent or, where applicable, rested on an unreasonable determination of the facts in light of the record before the state courts.

Respondent emphasizes that "18 judges of the New York courts" have rejected Petitioner's claims, as though the number itself supports their correctness. It doesn't. Section 2254(d) asks whether the operative decision reasonably applied clearly established federal law to the record, not how many courts have agreed with one another along the way.

For clarification, this Reply organizes those issues by subject matter as opposed to the Petition's numbering. Grounds One through Three present the ineffective assistance claims pled in Ground One of the Petition, separated by subject for ease of review; Ground Four presents the Confrontation Clause claim pled in Ground Two of the petition. Petitioner doesn't press separately the freestanding Due Process clam pled in the Petition's Ground Three, concerning Propsepctive Juror Mauline F., or the claim pled in the Petition's Ground Four, arising form Petitioner's Coram Nobis Application, both were found procedurally defaulted, the former for want of preservation on direct appeal and the latter for want of further review, and Petitioner doesn't contend otherwise. The related, exhausted ineffective assistance theory concerning Mauline F. is preserved and briefed in Ground One.

**First**, Petitioner contends that the state courts unreasonably applied Strickland V. Washington, Wiggins v. Smith, and Rompilla v. Beard in according strategic deference to counsel's handling of prospective juror Mauline F., who disclosed experiences directly related to the charged allegations, expressed difficulty serving,

and was seated without further inquiry. Petitioner further contends that counsel's own stated bias for that decision, a personal belief that the juror was fabricating her disclosure, independently fails to reflect the informed professional judgment Strickland requires, even credited as exactly given.

**Second,** Petitioner contends that the state courts unreasonably applied Strickland in treating counsel's handling of Detective Tedesco's testimonial relay of a non-testifying complainant's accusation as constitutionally adequate representation.

**Third,** Petitioner contends that any prejudice arising from deficient performance independently established under Grounds One and Two must be assessed against the totality of the evidence before the jury, with attention to the practical interaction of established deficiencies insofar as that interaction bears on Strickland's reasonable probability inquiry.

**Finally,** Petitioner contends that admission of that same testimonial accusation violated Crawford v. Washington; that the resulting procedural default is excused because it was itself the product of the ineffective assistance expressed in Ground Two; and, that the state court's harmless error determination doesn't withstand review under the standards governing federal habeas proceedings, including the jury's own contemporaneous deliberation requests.

Throughout, Petitioner doesn't ask this Court to reweigh witness credibility, reconsider disputed facts de novo, or substitute its judgment in place of the jury's or the state courts' The questions presented are narrower: whether state court adjudications satisfy the standards which Congress established in 28 U.S.C. §2254(d), measured against the contemporaneous record and

controlling Supreme Court authority.

## GROUND ONE

**The state court unreasonably applied Strickland v. Washington, Wiggins v. Smith, and Rompilla v. Beard by according strategic deference to counsel's challenged decision despite a contemporaneous record that Petitioner contends did not provide the factual foundation necessary for informed professional judgment.**

### A. Governing Supreme Court Standard

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). Review of counsel's performance is deferential, and courts must avoid evaluating strategic decisions through hindsight; but deference is owed only to decisions reflecting reasonable professional judgment under the circumstances counsel faced, grounded in either reasonable investigation or a reasonable professional judgment that further investigation or a reasonable professional judgment that further investigation was unnecessary. Strickland, at 690-691.

Wiggins v. Smith, 539 U.S. 510 (2003), and Rompilla v. Beard, 545 U.S. 374 (2005), confirm that strategic choices are entitled to deference only to the extent supported by reasonable professional judgments about the scope of investigation; where the factual foundation for an informed decision was adequately developed, the strategic explanation itself is subject to scrutiny under Strickland. The constitutional deficiency which Petitioner identifies is accordingly not that the record remained incomplete in some general sense but, that counsel's strategic judgment rested upon factual development that never occurred, eventhough counsel had an opportunity to obtain it before deciding. Although Wiggins and Rompilla arose in capital sentencing, the principle, that strategic deference presupposes a sufficient factual predicate, derives from Strickland itself and is not confined to that context.

The Sixth Amendment separately guarantees trial before an impartial jury, and meaningful voir dire serves to identify circumstances bearing on a prospective juror's impartiality. See, Irvin v. Dowd, 366 U.S. 717 (1961); Morgan v. Illinois, 504 U.S. 719 (1992). Petitioner does not rely on Irvin or Morgan as independent grounds for relief; they supply context for evaluating counsel's performance under Strickland. Neither does Petitioner contend that Mauline F.'s disclosures established actual bias as a matter of law or that federal law mandated her removal.

The question under 28 U.S.C. §2254(d) is narrower: it's whether the state court reasonably concluded that counsel exercised informed professional judgment where the contemporaneous record reflected disclosures directly related to the charged allegations, a request for additional discussion, and the absence of further inquiry, which Petitioner contends was necessary to a fully informed decision, not whether another attorney would necessarily have exercised a peremptory challenge.

B. The State Court's Adjudication

The §440 court rejected Petitioner's ineffective assistance claim after concluding that trial counsel's decision to seat prospective juror Mauline F. reflected a strategic judgment entitled to substantial deference under Strickland. In reaching that conclusion, the court credited counsel's §440 hearing testimony that he intentionally sought to keep Mauline F. on the jury because he believed her experiences and demeanor might ultimately benefit defense during deliberations.

Petitioner contends that the state court unreasonably applied Strickland, Wiggins, and Rompilla by according dispositve strategic deference without adequately reconciling counsel's later explanation with the voir dire record upon which that strategic judgment necessarily depended.

To the extent the state court relied upon People v. Maffei, 35 N.Y.3d 264 (2000), to support its finding that Mauline F. wasn't

actually biased, that authority doesn't assist Respondent's position. Because, in Maffei, the Court of Appeals found no actual bias where the prospective juror "did not reveal what about the case gave rise to his uneasiness...[nor] convey that his uneasiness was connected to any particular personal experience or relationship." Id at 271. Mauline F.'s disclosure was the opposite of the record in Maffei: she described precisely what gave rise to her concern, specifically having been raped herself, not once but twice, and directly connected that concern to the subject matter of the case before her. Where a prospective juror has disclosed that she would have "a problem" serving impartially because of a personal experience directly implicated by the charges, and has not unequivocally rehabilitated herself on the record, she is disqualified from service absent that rehabilitation. See, People v. Torpey, 63 N.Y.2d 361, 367-368 (1984).

Respondent's brief characterizes Petitioner's concern as a claim that Mauline F. was "inclined to convict petitioner baselessly to avenge past wrongs done to her." Petitioner has made no such argument, and the premise Respondent attributes to him is not the premise this Ground rests upon. The concern isn't that Mauline F. harbored a vindictive motive toward Petitioner personally; it is the considerably narrower and more familiar concern that juror's own, twice repeated lived experience of rape may affect her ability to remain impartial in a trial charging that same offense, whether or not she herself is aware of any such effect. That concern doesn't require, and hasn't ever required, a showing of conscious animosity or a desire for personal vindication. By recasting Petitioner's position as an accusation of vengeful intent, Respondent argues against a claim considerably more extreme than the one actually presented, and the absence of evidence supporting that more extreme claim doesn't answer the narrower one Petitioner actually raises. Respectfully.

Petitioner doesn't ask this Court to make an independent finding of actual bias. No, the point is narrower. The state court's own chosen authority draws a line based on the specificity and personal connection of a juror's disclosure, and Mauline F.'s disclosure falls on the side of that line that Maffei itself identifies as significant. A state court adjudication that invokes a

standard while reaching a conclusion inconsistent with that standard's own terms, applied to undisputed facts, is relevant to whether the resulting strategic deference finding reflected on a reasonable application of Strickland.

The Appellate Division's reliance on People v. Thompson, 21 N.Y.3d 555 (2013), in its November 14, 2024 order affirming the denial of Petitioner's CPL §440.10 motion, People v. Campbell, 232 A.D.3d 479 (1st Dept. 2024), is materially distinguishable. Thompson involved a prospective juror's friendship with the prosecutor; Mauline F. disclosed her own, twice repeated history of rape, expressed difficulty serving, and requested additional discussion that never occurred. Petitioner doesn't contend that Thompson itself establishes that retaining Mauline F. was unreasonable. The narrower point is that Thompson doesn't answer whether counsel's assessment here reflected informed professional judgment when the material uncertainty created by Mauline F.'s disclosure and request for further discussion remained unresolved.

Respondent's memorandum of law offers Mauline F.'s allegedly 'belated' disclosure as an objective fact supporting counsel's credibility assessment, even while acknowledging in the alternative that counsel's remarks may reflect 'a dated skepticism about date rape and marital rape." The contemporanous voir dire record materially weakens that asserted support: Mauline F. disclosed her history in response to counsel's follow-up question and supplied an immediate explanation that discussion of the case had cause the memories to surface. Petitioner therefore submits that the timing of the disclosure doesn't furnish the independent factual support Respondent attributes to it. This doesn't require the Court to reject every possible rationale for counsel's decision; it bears on whether the particular rationale credited by the state court was reasonably supported by the record.

The question before this Court isn't whether counsel was able to articulate a strategic explanation years later during the §440 hearing. The is question is whether the state court reasonably concluded that the challenged decision reflected informed professional judgment when evaluated against the contemporaneous

record developed during voir dire.

The significance of that distinction is central to this ground. Petitioner's challenge doesn't depend upon disagreement with counsel's trial strategy in the abstract. Instead, Petitioner contends that the contemporaneous record including Mauline F.'s disclosures, her request for additional discussion, the absence of further inquiry, and the surrounding voir dire proceedings must be considered when determining whether the state court reasonably applied Strickland under AEDPA.

C. The Contemporaneous Voir Dire Record

The constitutional question presented in this Ground must be evaluated against the voir dire record as opposed to counsel's retrospective explanation alone. During voir dire, prospective juror Mauline F. disclosed experiences directly related to the subject matter of the charged sexual allegations: she had previously been the victim of an attempted rape and later had been raped by her husband. Mauline F. explained that discussing the case caused those memories to return and that she was experiencing difficulty because of them. (Voir Dire at 187).

Mauline F. requested an opportunity to discuss those concerns with the court. The record reflects that this discussion never occurred, and that no additional questioning was conducted concerning the effect of those disclosures on her ability to serve before she was seated. For purposes of the ineffective assistance claim, Petitioner doesn't rest on an independent constitutional duty of the trial court to act sua sponte. The point is that counsel, having elicited the disclosure and chosen to assess Mauline F. credibility and suitability, was required to make a professionally reasonable response on the information available to him. Seeking completion of the requested inquiry, asking follow-up questions, or using an available challenge were among the means by which counsel could've obtained or acted on the missing information. The omission Petitioner identified is counsel's failure to take a reasonable step to resolve that material uncertainty before treating his assessment as informed.

The record further reflects why that discussion never occurred. When counsel later reminded the court that Mauline F. wished to speak privately, the following exchange took place:

THE COURT: She did say -- well, if she comes in here I think she's going to say that she may lose her job if she's out too long. She's got to Produce.

Mr. GARAFOLA: That's the one Judge.

THE COURT: Well, unless she has something to add. I don't think she wanted to add anything, other than she expressed her concern to lose her job. When we go back in the courtroom, we can discussion whether or not that's cause, but I don't she wanted to relate anything other than her concern that she's going to lose her job if she's here too long, that she's got to produce work in her shop.

(V at 205-06).

By this point, the court's own recollection of Mauline F.'s disclosure had narrowed to her financial concern alone, with no reference to the sexual assault history disclosed earlier in the same voir dire. Rather than correct the court, counsel confirmed its mistaken characterization: "That's the one, Judge." The private discussion Mauline F. had requested never occurred, and neither counsel nor the court thereafter revisited the disclosure that prompted her request. This exchange matters not because it establishes counsel's ultimate reasoning, but because it shows confusion in the record at the very moment clarification was available. Petitioner doesn't contend that Mauline F.'s automatically required her removal or established actual bias as a matter or law, nor that counsel was constitutionally required to exercise a peremptory challenge; the narrower point is that the information necessary to evaluate her disclosures were never developed before the challenged decision was made.

The same voir dire proceedings supply a useful comparison. Concerns also arose regarding Prospective Juror Shiwram: defense counsel objected that the circumstances were "highly prejudicial" and "not fair," the Prosecutor asked the court to "flesh it out,"

and the court conducted additional questioning before determining whether Shiram could serve. (V at 396-97). Petitioner doesn't contend that Shiwram and Mauline F. presented identical circumstances, only that further inquiry was an available mechanism during this same voir dire. And, that no comparable inquiry occurred for Mauline F., despite her disclosures, her expressed difficulty, and her request for further discussion. Petitioner's own testimony and counsel's own stated reasoning, addressed in Section D establish what actually happened; this isn't an invitation to speculate about why the inquiry was omitted, or how Mauline F. would've answered questions never asked. The issues under 28 U.S.C. §2254(d) is narrower still: whether the state court reasonably concluded that counsel's decision reflected informed professional judgment where the contemporaneous record ended at the point further inquiry had been request, but never undertaken.

### D. Why Petitioner Contends the State Court's Strategic Deference Analysis was Unreasonable

The constitutional question presented isn't whether counsel was able to articulate a strategic explanation during the §440 hearing. Neither does Petitioner's claim depend upon proving that counsel acted in bad faith or that every aspect of his explanation was inaccurate. Rather, the question under 28 U.S.C. §2254(d) is whether the state court reasonably concluded that the challenged decision reflected informed professional judgment when evaluated against the voir dire record.

The §440 court accepted counsel's testimony that he intentionally sought to seat Prospective Juror Mauline F. because he believed her experiences and demeanor might ultimately benefit the defense during deliberations. The court therefore treated the decision as a strategic judgement entitled to substantial deference under Strickland.

Under Strickland, Wiggins, and Rompilla, the existence of a strategic explanation does not itself resolve the constitutional inquiry. Strategic deference presupposes that counsel possesed

sufficient information to exercise reasonable professional judgment under the circumstances confronting him at the time of the challenged decision.

Here, however, the contemporaneous record reflects that Mauline F.'s disclosed experiences directly related to the charged allegations, expressed difficulty serving, requested additional discussion concerning those disclosures, and was ultimately seated without the further inquiry that Petitioner contends was necessary to permit a fully informed assessment of her ability to serve impartially.

The significance of the omitted inquiry is reinforced, not necessarily because additional questioning would've necessarily resulted in Mauline F.'s removal, but because it represented the principle means by which the factual basis for counsel's strategic decision could've been developed. Without that additional record development, Petitioner contends that the factual foundation supporting the later strategic explanation given by counsel remained materially incomplete.

Becuase, the contemporaneous record demonstrates that this wasn't an isolated inquiry, but instead was apart of a consistent pattern. Across the same jury selection proceedings, trial counsel identified and secured the removal, by cause, peremptory challenge, or consent, of every other perspective juror who disclosed any connection, however attenuated, to sex offenses. That pattern included prospective jurors who disclosed a friend or family members victimization, a professional connection to victims of sexual assault, or emotional difficulty with the subject matter generally, none of whom had personally experienced a sexual offense. Mauline F., who disclosed that she herself had been raped on two separate occasions, was the sole exception to that otherwise consistent pattern.

Respondent might argue that counsel was engaged throughout voir dire and that Mauline F.'s retention was therefore deliberate rather than inadvertent. Although the pattern is relevant, it doesn't resolve the Strickland inquiry by itself. Counsel's contemporaneous

confusion of Mauline F. with different prospective juror, and his confirmation of the court's mistaken characterization of her concern as purely financial, cut against an inference that the decision followed the same fully informed attention counsel brought to the other jurors. Petitioner relies on the pattern only as record based context for evaluating whether the state court reasonably treated Mauline F.'s retention as informed professional judgment.

The Contemporaneous voir dire record confirms that counsel applied exactly that standard, in real time, to another prospective juror, Shiwram, whose only disclosed connection to sexual abuse was through family members. During voir dire, upon hearing that disclosure, counsel stated "he was going to have to object, if she has that kind of bias," and that once a juror "came clean with her true feelings," he didn't "think that it's fair" to Petitioner to let the matter rest, prompting the very judicial inquiry that never occurred with respect to Mauline F. (V at 396-97). The Petitioner doesn't ask this Court to weigh whether Shiwram and Mauline F.'s disclosures were equivilant as a matter of law. Rather, counsel's own contemporaneous articulation of when a disclosure warranted further judicial inquiry, applied consistently to every other prospective juror with any connection to sexual offenses, provides an objective benchmark against which the state court's strategic deference finding as to Mauline F. may be evaluated. Mauline F.'s disclosure, that she had herself been raped, not once but twice, doesn't fall outside the standard counsel himself applied throughout the same proceedings to jurors with far more attenuated connections to the same subject matter. The state court's adjudication didn't address this internal inconsistency and counsel's own conduct when it accepted counsel's strategic explanation for the different treatment of Mauline F.

To the extent it is suggested that Mauline F.'s disclosure is distinguishable because she raised her financial concern before disclosing her history of sexual assault, the contemporaneous record doesn't support treating that sequence as suspect. Mauline F.'s

disclosure came directly in response to counsel's own follow-up question, whether she "would have difficulty serving," beyond the financial concern she'd already raised and she explained, without prompting, that the discussion of the case's subject matter during voir dire had caused those memories to surface. That sequence reflects the ordinary and foreseeable way in which a disclosure of this nature emerges in open court in response to a direct question, not an unexplained delay bearing on its reliability. Nothing in the contemporaneous record suggests that Mauline F. volunteered this history for any strategic or self-serving purpose, and the state court's adjudication did not identify any basis, beyond counsel' own after the fact assessment, for treating the sequence of her disclosure as diminishing its significance.

Petitioner's argument doesn't ask this Court to substitute its judgment for that of trial counsel or to conclude that another attorney would've exercised a challenge. On the contrary, Petitioner submits that the state court unreasonably applied Strickland by according dispositive strategic deference without first addressing whether the contemporaneous record contained the information necessary to support an informed strategic judgment.

The issue under §2254(d) is therefore a limited one. It is whether the state court reasonably reconciled counsel's later strategic explanation with a contemporaneous record that according to Petitioner, ended before the factual inquiry necessary to evaluate that strategy had been completed.

This isn't a case where the record is silent as to what occurred, leaving room this Court to conceive of a reasonable basis for counsel's conduct that neither party has identified. Petitioner testified at the §44o hearing that, upon hearing Mauline F.'s disclosure, he told counsel directly that she was "not good" and would "probably be no good" as a juror because she was herself a victim of a similar crime and that counsel's response was, "relax. I got this." (Hearing at 55). The same response "Relax. I got this," or its equivalent, is what Petitioner testified counsel gave when Petitioner raised concerns in the moment about the Angela V. letter and the Walsh letters as well, discussed further in Ground Three.

Whatever weight this Court affords Petitioner's account of counsel's precise words, is not that it resolves any credibility dispute between Petitioner and counsel; the point is narrower. Counsel's own testimony affirmatively supplies his stated reasoning for retaining Mauline F., that he believed she was "fabricating atleast in part" her disclosure. That testimony materially narrows the range of plausible strategic explanations, although Harrington v. Richter, doesn't permit a federal habeas court to disregard any other reasonable basis fairly supported by the record. The relevant question is therefore whether the state court could reasonably treat counsel's actual decision as informed professional judgment when the stated explanation and the contemporaneous voir dire record are considered together.

The §440 court's decision also provided a rationale for counsel's silence when arranging the follow-up Mauline F. had requested: because counsel wanted Mauline F. on the jury, the court reasoned, "presumably" there would have been no point in further questioning. Under Harington v. Richter, the fact that counsel didn't articulate that precise rationale doesn't by itself make the state court's analysis unreasonable; a federal habeas court must consider arguments or theories that reasonably could have supported the state court result. The relevant question is instead whether that hypothesized rationale is fairly supported by this record and can be reconciled with Mauline F.'s unresolved request for discussion, counsel's contemporaneous confusion about the reason for that request, and counsel's own stated credibility rationale. Petitioner submits that those record facts materially weaken the hypothesized explanation rather than merely leaving an evidentiary silence for AEDPA deference to fill.

For those reasons, Petitioner submits that the state court's adjudication involved an unreasonable application of Strickland, as further informed by Wiggins and Rompilla, within the demanding framework of 28 U.S.C. §2254(d).

E. Application of AEDPA to Petitioner's Claim

Respondent correctly observed that federal habeas review is governed by the highly differential standards established by 28 U.S.C. §2254(d). Petitioner doesn't dispute that principle. This Ground depends upon the faithful application of AEDPA as opposed to departure from it.

Petitioner doesn't ask this Court to decide whether it would've seated Prospective Juror Mauline F. in the first instance, whetherh another attorney might have exercised a peremptory challenge or whether the Court would have evaluated the voir dire differently on direct review. Those questions are beyond the limited function of federal habeas review.

Petitioner contends that the state court unreasonably applied Strickland when it accepted counsel's post-conviction strategic explanation without adequately reconciling that explanation with the voir dire record. Petitioner submits that the record reflected: (1) disclosures directly related to the charged sexual allegations; (2) an expressed difficulty serving; (3) a request for additional discussion; and (4) the absence of the additional inquiry that Petitioner contends was necessary to permit informed professional judgment.

Viewed in isolation each of those circumstances might reasonably be subject to differing interpretations. AEDPA doesn't require otherwise. Petitioner's contention is instead that, when considered together, those contemporaneous circumstances created a record materially different from the one assumed by the state court's strategic deference analysis.

Nothing in this Ground asks the Court to presume actual bias, speculate regarding answers never given, or substitute hindsight for professional judgment. Rather, Strickland's requirement of informed professional judgment presupposes a record sufficient to permit that judgment to be made. Petitioner contends that Mauline F.'s unresolved disclosure left and request for further discussion left a material uncertainty that the state court didn't reasonably

reconcile with counsel's asserted strategy.

Petitioner advances two independent theories concerning the performance prong. First, counsel treated the decision as informed without resolving a material uncertainty that further inquiry could've addressed. Second, even if the available information is treated as sufficient for decision, counsel's own stated credibility rationale remained subject to Strickland's objective reasonableness inquiry. Either theory may independently support deficient performance under Strickland, but neither eliminates Petitioner's separate obligation to establish prejudice.

Counsel testified at the §440 hearing that he concluded that Mauline F. was "fabricating atleast in part" her disclosure having been raped, and this conclusion rested on his own view that there was no such thing as date rape and that a wife would not remain with a husband who sexually assaulted her. (Hearing at 117-21). A strategic label doesn't place that reasoning beyond Strickland's scrutiny. Petitioner contends that a credibility assessment resting on generalized assumptions about how victims of sexual violence behave, rather than on information developed through inquiry of this prospective juror, weighs strongly against treating the decision as informed professional judgment. See, Miller v. Webb, 385 F.3d 666, 675-676 (6th Cir. 2004) cited only as persuasive authority to illustrate the difference between strategy grounded in reliable information and a decision resting on an unsupported factual premise; the controlling rule for §2254(d)(1) purposes remains Strickland and the Supreme Court decisions applying it.

The §440 court's own decision confirmed that the premise was one that the adjudicating court itself declined to endorse. Justice Lieb wrote: "although this court does not support the apparent views of trial counsel, it still concludes that trial counsel's choices were strategic." (REXH Z at 26 n.17). Petitioner's point isn't that Miller v. Webb supplies an independent AEDPA rule, but the state court was still required under Strickland to determine whether the strategy it credited reflected reasonable professional judgment rather than merely whether counsel could describe it as strategic.

This is not a request that the Court presume Mauline F. was actually biased; it is a request that the Court examine whether counsel's own stated basis for discounting her disclosure reflected the informed professional judgment Strtickland requires rather than generalized assumptions about how victims of sexual violence behave. This performance theory doesn't depend on proving that additional questioning necessarily would've changed Mauline F.'s answers, but relief still requires a separate prejudice showing addressed below.

For these reasons, the adjudication of this claim involved an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. §2254(d)(1). To the extent the state court's analysis depended upon factual assumptions inconsistent with the voir dire record, Petitioner further submits that relief is warranted under §2254(d)(2).

F. Prejudice Under Strickland

Strickland requires more than identification of deficient performance. A petitioner must also demonstrate prejudice, that there exist a reasonable probability that, but for counsel's constitutionally deficient performance, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 694 (1984).

Petitioner doesn't contend that prejudice depends upon speculation regarding how prospective juror Mauline F. would've answered questions that were never asked. Nor does Petitioner ask this Court to presume actual bias from the record before it. The decision whether to accept or challenge a prospective juror is among the most consequential strategic judgments made during a criminal trial because, it directly concerns the composition of the jury that will determine guilt or innocence. An unresolved factual uncertainty bearing on a juror's ability to serve may therefore undermine confidence in the professional basis for counsel's decision, although Strickland prejudice still requires a reasonable probability of a different result and cannot be inferred merely from

the absence of further questioning.

Here, Petitioner contends that the contemporaneous record reflects disclosures directly related to the charged allegations, an expressed difficulty serving, a request for additional discussion, and the absence for further inquiry before the juror was seated. According to Petitioner, those circumstances deprived counsel of information necessary to make an informed strategic decision and deprived the state courts of a complete contemporaneous record against which that decision could later be evaluated.

The prejudice inquiry cannot be satisfied simply by showing that additional questioning would've produced a more complete record. Strickland requires a reasonable probability of a different reslut sufficient to undermine confidence in the outcome. Petitioner's prejudice theory therefore rests on the consequence of the omission: Mauline F. disclosed experiences directly related, to the charged offenses, expressed difficulty serving, requested further discussion, and then deliberated without the additional inquiry that could've clarified whether she could serve impartially. Petitioner doesn't ask the Court to assume what Mauline F. would've said. Simply, Petitioner submits that, when this record is considered together with the remaining trial level deficiencies addressed in Grounds Two and Three, there is a reasonable probability sufficient to undermine confidence in the reliability of the verdict. To the extent the Court concludes that the record doesn't permit that inference as to Ground One standing alone, Petitioner preserves the same circumstances as part of the total Strickland prejudice analysis.

This prejudice analysis must be conducted against the totality of the evidence before the jury. As explained in Ground Three, if the Court independently finds more than one instance of constitutionally deficient performance, their practical interaction may be relevant to whether the established deficiencies create a reasonable probability sufficient to undermine confidence in the outcome. Petitioner doesn't rely on a freestanding cumulative error doctrine.

For these reasons, the state court's conclusion that Petitioner failed to establish prejudice constituted an unreasonable application of Strickland when viewed in light of the contemporaneous record and the totality of the representation challenged in this proceeding.

G. Conclusion

Ground One doesn't ask this Court to determine that prospective juror Mauline F. was actually biased, that counsel was constitutionally required to exercise a challenge, or that every strategic decision with which a reviewing court disagrees constitutes ineffective assistance.

Petitioner contends that the state courts unreasonably applied clearly established Supreme Court precedent by according strategic deference without adequately reconciling counsel's decision with the voir dire record. Counsel's stated credibility rationale supplies additional record based support for that Strickland argument; Miller v. Webb is offered only as persuasive illustration, not as an independent source for clearly established federal law.

As discussed above, the record reflects that Mauline F. disclosed experiences directly related to the charged allegations, expressed difficulty serving, requested additional discussion, and was ultimately seated without the further inquiry that Petitioner contends was necessary to permit informed professional judgment. The contemporaneous voir dire proceedings, including counsel's consistent practice of securing the removal of every other prospective juror with any connection to sexual offenses, further demonstrates that record development was an available and utilized mechanism during jury selection when concerns regarding a prospective juror arose.

For these reasons, Petitioner submits that Ground One satisfies §2254(d)(1) under Strickland, as informed by Wiggins and Rompilla. To the extent the adjudication rested upon factual conclusions inconsistent with the contemporaneous record, Petitioner separately invokes §2254(d)(2).

## GROUND TWO

**The state court unreasonably applied Strickland v. Washington by concluding that counsel's handling of testimonial accusation evidence introduced through Detective Tedesco constituted objectively reasonable professional assistance.**

### A. Governing Supreme Court Standard

The Sixth Amendment guarantees the effective assistance of counsel at every critical stage of a criminal prosecution. Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must show both constitutionally deficient performance and resulting prejudice. Id. at 687. Review is highly deferential and must avoid distorting effects of hindsight, but Strickland still requires that counsel's conduct reflect objectively reasonable professional judgment under the circumstances counsel faced.

Kimmelman v. Morrison, 477 U.S. 365, 384-385 (1986), applies Strickland to counsel's failure to competently litigate an available constitutional suppression issue. Kimmelman doesn't establish that every omitted objection or motion is deficient; rather, it illustrates that conduct attributable to inadequate investigation or misunderstanding, rather than informed professional judgment, is evaluated under Strickland's objective reasonableness standard. That distinction is relevant here because Ground Two challenges the reasonableness of counsel's actual handling of an objectionable testimonial accusation, not merely the absence of a preferred tactic.

When a state court adjudicates an ineffective assistance claim on the merits, federal habeas review is further limited by 28 U.S.C. §2254(d): the question is not whether this Court would independently find deficient performance, but whether the state court reasonably applied Strickland to the record before it. Petitioner recognizes that Harrington v. Richter, 562 U.S. 86 (2011), requires substantial deference, but this case doesn't depend on reconstructing hypothetical strategic explanations form a silent record. Because, the trial record affirmatively reflects the circumstances surrounding Detective Tedesco's testimony, counsel's response, and the continued presence of the challenged testimonial accusation before the jury. Accordingly, the question isn't whether a reviewing court can imagine a conceivable strategic explanation in the abstract, but whether the state court reasonably applied Strickland to the record that actually existed.

Although the testimony at issue also implicates the protections recognized in Crawford v. Washington, 541 U.S. 36 (2004), Ground Two presents only the ineffective assistance question. The independent Confrontation Clause analysis and applicable harmless error standards are addressed separately in Ground Four. The issue under 28 U.S.C. §2254(d) is whether the state court reasonably concluded that counsel's handling of Detective Tedesco's testimony reflected objectively reasonable professional judgment when evaluated against the trial record.

B. Detective Tedesco's Testimony

The ineffective assistance claim presented in this Ground

arises from Detective Tedesco's testimony concerning a police lineup involving non-testifying complainant Betsey V.

During the People's case, Detective Tedesco testified regarding the procedures used during the lineup and the identification made by Betsey V. However, in the course of that testimony, Detective Tedesco relayed not just Betsey V.'s identification of co-defendant Ebron, but also an additional statement attributed to Betsey V. According to Detective Tedesco's Testimony, Betsey V. stated:

"That's the one who told the fat kid to rape me,"

The statement identified co-defendant Ebron as "the one" and referred to Petitioner as "the fat kid." Betsey V. didn't testify during Petitioner's trial. Consequently, the jury heard the accusation through Detective Tedesco rather through testimony subject to cross-examination by the defense.

Beyond the constitutional Confrontation concern, the admission of this testimony also violated New York Criminal Procedure Law §60.25, which permits a witness' prior lineup identification to be related through a third party only where the identifying witness is unable, based on present recollection, to make an in-court identification. Betsey V. didn't testify at all, and an absent witness isn't "unable" to identify within the meaning of the statute. See, People v. Patterson, 93 N.Y.2d 80, 82 (1999)(CPL §60.25 "does not allow third-party testimony confirming a pretrial identification by a nontestifying witness"). This statutory basis existed independently of, and in addition to, the constitutional Confrontation concern, and didn't require resolution of any

unsettled question regarding the testimonial character of the statement.

The contemporaneous trial record further reflects that counsel responded during Detective Tedesco's testimony. As the §440 court later observed, however, the record does not clearly establish whether counsel's objection was directed specifically to the testimonial accusation itself, to the admission of the lineup testimony more generally, or to another aspect of the examination. (REXH Z at 30 n.22). Regardless of that ambiguity, the accusation remained before the jury. Counsel did not obtain an order striking the statement, no limiting instruction was given directing the jury to disregard the accusation, and the jury was permitted to consider the testimony during deliberations.

### C. Why Petitioner Contends the State Court Unreasonably Applied Strickland

Justice Marcus' December 19, 2019 Decision ordering an evidentiary hearing provides useful but, limited context. On the trial record then before him, he stated: "Counsel should have objected to or moved to strike Detective Tedesco's reference to Betsey V.'s lineup statement." (REXH V at 13). That preliminary assessment did not itself decide the ultimate Strickland claim or dispense with AEDPA deference to the later merits adjudication. Its significance is narrower. Because, before counsel supplied any post-conviction strategic explanation, the trial record itself had already identified the omission now at issue as sufficiently substantial enough to warrant further inquiry.

In denying relief after the hearing, the §440 court observed that it could "envision a strategic reason why a defense attorney might ch[oo]se to let the testimony lie," while also acknowledging that this was speculation. (REXH Z at 31). Under Harrington v. Richter, 562 U.S. 86, the absence of an explanation actually articulated by counsel is not dispositive; the federal habeas question includes whether a reasonable argument or theory supported by the record could sustain the state court result. Petitioner's challenge, therefore, doesn't rest on the mere fact that the court hypothesized a rationale. It rests on whether any such rationale remains reasonable when tested against the affirmative record: counsel recognized the hearsay and Confrontation Clause problem, objected, told the court he would address the accusation on cross-examination, and then didn't return to the accusation or, obtain any curative ruling. (Trial at 1034-35).

The §440 proceedings further illuminate that affirmative record. Trial counsel described Detective Tedesco's testimony as "more than objectionable" and testified that he understood it to raise hearsay and Confrontation Clause concerns when it was elicited. When directed to the trial transcript, however, the record didn't clearly establish whether the objection identified by counsel was directed specifically to the testimonial accusation or to another aspect of the lineup testimony. Counsel's account of what he pursued focused on defects in the lineup photographs themselves. Taken together, counsel's contemporaneous recognition of the legal problem and his later characterization of the testimony materially narrow, without categorically eliminating, the range of strategic explanations consistent with the record.

The Respondent's own post-hearing submission preserves the trial colloquy: "**Detective Tedesco:** I believe she said that that's the one who told the fat kid to rape me. **Mr. Garafola:** Note my objection, Judge. I'll take that on cross-examination. **The Court:** Yes, you may inquire of the witness as to any circumstances surrounding that lineup." Counsel was thus granted the opportunity he requested. However, his cross-examination, by his own later description, pursued defects in the lineup procedure as opposed to the specific accusation attributed to Betsey V. That mismatch doesn't automatically establish deficient performance, but it is affirmative record evidence that any hypothesized strategic rationale must explain: counsel told the court that he'd address the accusation and the record doesn't show that he did so or, obtained another effective remedy.

Therefore, Richter doesn't permit the analysis to stop at the abstract possibility that some strategy could be imagined. Instead, it requires asking whether a reasonable argument or theory, fairly supported the record, could sustain the state court's application of Strickland. Here, the relevant record includes counsel's legal concern, his objection, his stated intention to use cross-examination, the narrower cross-examination he actually pursued, and the absence of a motion to strike or limiting instruction directed to the accusation.

Kimmelman reinforces that distinction. There the Supreme Court treated counsel's failure to litigate the suppression issue as deficient where it resulted from a failure to conduct basic discovery rather than a reasoned choice. 477 U.S. at 384-385.

Petitioner's argmument here is narrower: counsel testified that he recognized the hearsay and Confrontation Clause problem, objected, told the court he'd address the matter on cross-examination, and then didn't obtain exclusion of the accusation, an order striking it, or a limiting instruction. Kimmelman, therefore supports evaluating whether that sequence reflected objectively reasonable professional judgment under Strickland; it doesn't supply a per se rule that every unsuccessful evidentiary objection is constitutionally deficient.

However, the absence of an articulated strategic explanation is made more significant by counsel's own hearing testimony that he recognized the legal problem at the time. Counsel testified that he understood Detective Tedesco's testimony to raise both hearsay and Confrontation Clause concerns when it was elicited at trial. (Hearing at 97-98). That testimony doesn't categorically foreclose every conceivable strategic explanation under Harrington v. Richter, but it materially limits the plausible explanations consistent with the record. A reviewing court must still ask whether a reasonable basis for counsel's handling can be identified from the record as a whole, as opposed to treating the mere possibility of strategy as dispositive. Because here, counsel's recognition of the problem, his general objection, his stated intention to address the matter on cross-examination, and the absence of any later effort directed to the accusation, are the record facts against which that inquiry must be conducted.

Respondent's post-hearing submission proposed that counsel may have chosen to keep jury's attention on defects in the lineup

procedure rather emphasize Betsey V.'s accusation. And, that theory is properly considered under Richter even though counsel didn't expressly adopt it. However, Petitioner submits, that its fit with the record is weak because counsel had already objected in the jury's presence, expressly announced that he would take the matter up on cross-examination and, then pursued a different narrower subject. The question isn't whether an attention minimization strategy is conceivable in the abstract but, whether fairminded jurists could treat that theory as a reasonable explanation of the conduct reflected in this record.

Accordingly, Petitioner doesn't contend that counsel's hearing testimony forecloses every unstated strategic explanation. Richter requires consideration of reasonable theories that could've supported the state court result. Counsel's testimony nevertheless constrains the inquiry because, it establishes what he recognized at the time, and must be considered together with what he told the trial court he would do. Petitioner submits that, on this affirmative record, the state court couldn't reasonably treat the mere possibility of strategy as sufficient without reconciling the proposed strategy with counsel's contemporaneous response and the absence of any effective remedial action directed toward the accusation.

Petitioner doesn't ask this Court to resolve that ambiguity through speculation. On the contrary, the significance of the contemporaneous record is that, whatever the precise scope of counsel's objection, the testimonial accusation remained before the

jury, was not stricken, and wasn't accompanied by any limiting instruction directing the jury to disregard it. The state court's analysis focused mainly upon the possibility that counsel may have possessed a strategic explanation for his conduct, without adequately addressing whether counsel's representation, viewed in its entirety, resulted in that accusation remaining before the jury without any effective remedial action.

Therefore, this case presents an existing evidentiary record against which counsel's performance can be evaluated, not an evidentiary vacuum requiring hypothetical reconstruction. Accordingly, the question under 28 U.S.C. §2254(d) is whether the state court reasonably evaluated counsel's representation against the record as it actually existed, instead of against a reconstructed understanding of what counsel may have intended.

Petitioner therefore submits that the question under §2254(d) isn't whether some conceivable strategic explanation might later be imagined, but whether the state court reasonably concluded that counsel's actual handling of the testimonial accusation, as reflected in the contemporaneous record, satisfied Strickland's requirement of objectively reasonable professional assistance.

D. Application of AEDPA

Petitioner recognizes that review under 28 U.S.C. §2254(d) is intentionally deferential and that federal habeas relief is unavailable merely because a federal court might have reached a different conclusion in the first instance. And that, AEDPA instead asks whether the state court's adjudication involved an unreasonable application of clearly established Supreme Court precedent or, where

applicable, rested upon an unreasonable determination of the facts. Ground Two is presented within that limited framework.

Petitioner doesn't ask this Court to conclude that every unsuccessful objection constitutes ineffective assistance, nor that counsel was constitutionally required to employ any particular litigation strategy during Detective Tedesco's testimony. Instead, Petitioner contends that the state court unreasonably applied Strickland by according dispositive deference to counsel's handling of the challenged testimony without adequately evaluating the contemporaneous record demonstrating that the testimonial accusation ultimately remained before the jury without being stricken or limited.

Petitioner further submits that this claim is evaluated upon an affirmative trial record rather than a silent one. The relevant circumstances surrounding Detective Tedesco's testimony, counsel's response, and the disposition of the challenged accusation are reflected in the trial proceedings themselves. The reasonableness of the state court's application of Strickland may be assessed directly against that contemporaneous record.

For those reasons, Petitioner submits that the adjudication of Ground Two involved an unreasonable application of Strickland within the meaning of 28 U.S.C. §2254(d)(1). To the extent the adjudication depended upon factual conclusions inconsistent with the trial record, Petitioner further submits that relief is warranted under §2254(d)(2).

E. Prejudice Under Strickland

Strickland requires a petitioner to establish not only constitutionally deficient performance but also prejudice. The prejudice inquiry asks whether there exists a reasonable probability that, but for counsel's challenged performance, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 694 (1984). Petitioner doesn't contend that prejudice arises merely because objectionable testimony reached the jury or because another attorney might have responded differently. Instead, Petitioner submits, his claim concerns the effect of counsel's handling of testimonial accusation evidence that remained before the jury without being stricken or accompanied by a limiting instruction.

The challenged statement was not offered through testimony subject to cross-examination by the declarant herself. Instead, the jury heard Detective Tedesco relate an accusation attributed to a non-testifying complainant concerning the very conduct underlying the charged sexual offenses. According to Petitioner, counsel's handling of that testimony permitted the accusation to remain before the jury throughout its deliberations.

The prejudice prong under Strickland must therefore consider the significance within the trial as a whole. Petitioner's contention is not that the challenged testimony alone necessarily determined the verdict but, that confidence in the reliability of the proceeding is undermined where the jury was permitted to consider the testimonial accusation without any effective action by

counsel.

The Appellate Division found on direct appeal that identification "was not a fundamental issue in the case," People v. Campbell, 131 A.D.3d 882 (1st Dept. 2015), a finding the Appellate Division relied upon again in 2024 when affirming the denial of Petitioner's CPL §440.10 motion. People v. Campbell, 232 A.D.3d 479 (1st Dept. 2024). The contemporaneous record gives Petitioner a substantial basis to challenge that characterization. The jury's deliberation notes asked the court to clarify whether the rape and criminal sexual act counts pertained to Betsey V. or Angela V. and separately requested lineup photographs of Petitioner and co-defendant Ebron. (Trial at 1261-1277). Granted, those requests don't prove that identity was dispositive but, they are objective evidence that attribution and lineup evidence remained matters of concern during deliberations. Petitioner therefore submits that, the state court's characterization can't be treated as self-proving when assessing the significance of counsel's handling of Detective Tedesco's testimony.

This prejudice analysis should also be understood together with Ground Three, where Petitioner explains why Strickland requires consideration of counsel's challenged decisions in their totality rather in isolation. Ground Two therefore, addresses the prejudice associated with counsel's handling of Detective Tedesco's testimony, while Ground Three explains why that prejudice should ultimately be assessed together with the remaining ineffective assistance claims presented within this Reply.

Finally, Ground Four separately addresses the independent

constitutional significance of the challenged testimony under Crawford v. Washington, 541 U.S. 36 (2004), together with the applicable harmless-error standards governing federal habeas review. This section is limited to the prejudice inquiry required by Strickland. Although Respondent urges that, because the Appellate Division found the admission Betsey V.'s testimonial accusation harmless beyond a reasonable doubt on direct appeal, that finding forecloses a showing of prejudice under Strickland. It doesn't automatically do so. Chapman, Brecht, and Strickland asks whether there is a reasonable probability, one sufficient to undermine the confidence in the outcome that, but for counsel's deficient performance, the result would have been different. Strickland, 466 U.S. at 694.

That inquiry doesn't require Petitioner to show that the remaining evidence was legally sufficient or to prove a different outcome by a preponderance. Kyles v. whitley, 514 U.S. 419, 434-435 (1995). The Appellate Division's harmless-error ruling is relevant to the overall analysis but, it doesn't substitute for the distinct prejudice inquiry which Strickland requires.

Justice Marcus' Decision ordering an evidentiary hearing likewise recognized that harmless-error review of the underlying evidentiary problem didn't itself answer the distinct ineffective assistance claim. Granted, that preliminary observation doesn't resolve Strickland prejudice or bind the later merits adjudication; but, it simply reinforces the analytical point that the Chapman ruling and the Strickland prejudice inquiry aren't interchangeable.

For these reasons, the state court unreasonably concluded that petitioner failed to establish prejudice under Strickland when the

challenged testimony is evaluated in light of the trial record and the totality of the representation provided.

### F. Conclusion

The state court unreasonably applied Strickland by concluding that counsel's handling Detective Tedesco's testimony reflected objectively reasonable professional assistance when measured against the affirmative trial record.

Whatever the precise scope of counsel's contemporaneous objection, Betsey V.'s accusation remained before the jury, wasn't stricken, and wasn't accompanied by a limiting instruction. Despite counsel telling the court that he would address the testimony on cross-examination, the record reflects that his cross focused instead on lineup procedure. Those circumstances required a more searching Strickland analysis than the court afforded.

Accordingly, Petitioner respectfully submits that, Ground Two satisfies §2254(d)(1) and, to the extent the adjudication rested on factual conclusions inconsistent with the trial record, §2254(d)(2).

## GROUND THREE

Strickland prejudice must be evaluated against the totality of the evidence and the overall effect of any constitutionally deficient performance

### A. Governing Supreme Court Standard

Ground Three doesn't present a freestanding cumulative-error claim. It addresses the methodology of Strickland prejudice.

Strickland expressly requires consideration of "totality of the evidence before the judge or jury." 466 U.S. at 695-696. Petitioner therefore asks the Court, when evaluating any deficient performance established in Grounds One and Two, to assess its prejudicial effect against the full trial record rather than against an artificially isolated slice of that record.

Where more than one act or omission is independently found constitutionally deficient, Petitioner submits that their interaction may be relevant to the reasonable probability inquiry because they operated in the same trial and upon the same verdict. Petitioner doesn't contend that Strickland expressly creates a freestanding rule requiring aggregation of every alleged error, or that the Supreme Court has recognized a separate cumulative error ground for AEDPA purposes.

New York and Circuit decisions discussing cumulative attorney error aren't offered as sources of clearly established federal law. Federal rule remains Strickland itself. The Walsh letters, Angela V. letter, Mauline F.'s voir dire issue, Detective Tedesco's testimony, and plea communications record are relevant only insofar as they

bear on the total evidentiary picture, the reliability of counsel's asserted strategies, or the prejudice flowing from deficiencies independently established under the Sixth Amendment.

B. **The State Court's Application of Strickland**

The totality inquiry matter here because the properly admitted evidence concerning the Betsey V. related counts was itself thin. No physical or forensic evidence connected Petitioner to a sexual offense against Betsey V. The only witness describing Petitioner's own conduct towards her was Devon Walsh, a co-defendant originally charged with first degree rape who resolved his exposure through a plea to unlawful imprisonment and testified pursuant to a cooperation agreement. Evidence concerning Clarice J. involved a separate complainant and a separate course of conduct and, however strong as to those charges, does not resolve the reliability of the Betsey V. counts. The state court's claim-by-claim analysis therefore had to be measured against the evidentiary foundation actually supporting those counts.

The same point can be stated without treating the allegations as a freestanding cumulative error claim. The Betsey V. related counts depended heavily on co-defendant Walsh's testimony, and each established deficiency must be evaluated against that evidentiary setting. If the Court independently finds more than one constitutional deficiency, their practical interaction may matter to the reasonable probability inquiry because they operated on the same jury and verdict. Ground Three therefore uses the surrounding record to measure prejudice; it doesn't treat the number of alleged errors as proof of prejudice. To the extent Repsondent characterizes the

evidence of Petitioner's guilt generally as overwhelming, that characterization doesn't amongst the separate charged episodes. The testimony of Clarice J., and the corroborating documentary and electronic evidence associated with it, concerned an entirely separate course of conduct involving a different complainant, weeks removed from the incident giving rise to the Betsey V. related counts. That evidence however substantial as to the charges it supports, has no bearing on the sufficiency or reliability of the evidence supporting the charged offenses concerning Betsey V. specifically, which is the evidentiary foundation each of the matters discussed below must be measured against.

Petitioner therefore asks this Court to apply Strickland's prejudice standard to the totality of the evidence before the jury. The Mauline F. and Detective Tedesco issues remain the principal preserved ineffective assistance theories addressed in Grounds One and Two. Other portions of the §440 record including co-defendant Walsh letters, the record developed at the §440 hearing reflects that counsel's stated reasons for declining their use did not survive scrutiny on their own terms. Counsel testified that he told Petitioner's father, contemporaneously in 2009, that he could not read the letters. That contemporaneous account is consistent with counsel's hearing testimony on the same point. But, whatever difficulty the handwriting genuinely posed, the record shows it was not insurmountable. Because, at the hearing, counsel was able to read the same letters aloud without difficulty when directed to do so, and Petitioner's father had likewise been able to prepare typewritten version of their contents years earlier. Difficulty reading a document is a reason to have it transcribed or reviewed

more closely before deciding it lacks value, not a reason to conclude, as counsel did, that it had none. Next, counsel suggested that the letters would have appeared to show Petitioner attempting to bribe Walsh; however, the record instead reflects Walsh was the one soliciting money from Petitioner, not the reverse. Counsel ultimately conceded that the letters, which described the police pressuring Walsh to cooperate, had evidentiary vale.

The record reflects a further, direct inconsistency in counsel's own testimony regarding whether he ever questioned Walsh about the police coercion claims described in the letter. Counsel testified that he had cross-examined Walsh and that Walsh "never said anything about a hammer, or the police mistreated him" implying that counsel had raised the subject and Walsh simply didn't corroborate it. Moments later, asked directly whether he had question Walsh about the mistreatment, counsel gave the opposite answer: "I didn't ask about the letter or in the police mistreated him, absolutely not." Those two statements cannot both be accurate. When asked next whether Walsh's own written account of police mistreatment had evidentiary value, counsel responded, "He had an attorney. He should tell him, not me." Deflect any responsibility for eliciting or investigating impeachment material that, if pursued, would have benefited counsel's own client, on the theory that doing so was instead the responsibility of Walsh's separate counsel.

Counsel's successive explanations concerning the Walsh letters, and the internal inconsistency in his testimony about whether he questioned Walsh regarding coercion, may bear on the evidentiary context and on the weight of the asserted strategy concerning those

letters. See, Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003), cited only as persuasive circuit authority and not as established federal law for AEDPA purposes. Petitioner doesn't offer the Walsh letter record as new independent ground for relief in this Reply.
In affirming the denial of Petitioner's CPL §440.10 motion, the Appellate Division characterized counsel's handling of the Angela V. letter and the Walsh letters together as reflecting "a reasonable and legitimate strategic basis for his decision to use only certain letters written by or to a co-defendant, in order to impeach the People's witness." People v. Campbell, 232 A.D.3d 479, 480 (1st Dept. 2024)(citing People v. Wragg, 26 N.Y.3d 403, 412 (2015); People v. Pennington, 27 A.D.3d 269, 270 (1st Dept. 2006)). That characterization treats the decision to use the Angela V. letter and the decision not to use the Walsh letters a single, coherent editorial choice among available impeachment materials. However, the record developed at the §440 hearing doesn't support that unified characterization.

Because, as set forth above, the hearing court itself found counsel's use of the Angela V. letter "flawed," and counsel's successive, mutually inconsistent justifications for declining to use the Walsh letters were each independently undermined by the record. A decision that was flawed as to one letter and unsupported by any single reasonable and legitimate strategic choice the Appellate Division presupposes. This inconsistency isn't offered as its own independent ground; however, it does bear on the same cumulative constitutional significance of representation that Grounds One and Two, and this Ground, place before the Court.

The plea-communications record concerns a different alleged deficiency and a different form of prejudice from the trial verdict issues presented here. Petitioner doesn't rely on discrepancies in counsel's plea recollection to infer that his unrelated trial explanations were therefore false or unreasonable; such an inference would improperly substitute a general credibility attack for a claim specific Strickland analysis. The trial level theories in this Reply instead stand or fall on the contemporaneous record and the explanations tied to each challenged decision.

The same claim specific limitation applies to collateral discrepancies concerning the timing of counsel's retention. Those matters aren't used as propensity evidence that counsel performed deficiently elsewhere. Ground Three relies on them only insofar as they appear in the state court history as they don't supply trial verdict prejudice and are not necessary to the adjudication of Grounds One and Two. Accordingly, the Court need not disturb the §440 court's plea related credibility findings to resolve the trial level ineffective assistance claims presented here. Because, the relevant comparison is between each asserted strategy and the record bearing on that strategy, not between counsel's credibility on one subject and his performance on another.

The §440 court separately evaluated counsel's handling of Mauline F. and Detective Tedesco's testimony. Petitioner doesn't contend that separate adjudications is itself constitutional error. Ground Three addresses the distinct prejudice question that follows if the Court independently finds one or more deficiencies: the effect of each established deficiency must be measured against the totality of the evidence, and the practical interaction of multiple established deficiencies may be relevant to whether there is a reasonable probability of a different result.

Petitioner submits that the alleged deficiencies identified in Grounds One and Two should not be viewed as isolated events disconnected from one another. Instead, they concern different stages of the same criminal proceedings and therefore beard up the overall reliability of the adversarial process. The interaction between trial counsel's use of the Angela V. letter and counsel's handling of Detective Tedesco's testimony illustrates why an isolated claim by claim analysis understates the resulting prejudice. Petitioner was the sole defendant at trial: co-defendants Ebron and Walsh had already resolved their cases by guilty plea before Petitioner's trial began. Petitioner was charged with crimes against Clarice J. and Betsey V. only. Petitioner was never tried with any crime whether as a principle or acting in concert, against Angela V. Notwithstanding the absence of any sex charge, trial counsel introduced, a letter unredacted, a letter which Angela V. described being raped and forced to pose for photographs at gunpoint, in the same document in which she referenced the threats against the wholly distinct Sex Trafficking charges involving Clarice J. separately.

The prosecutors own summation confirms how this material was actually used: the prosecutor told the jury that Angela V. "alleged that Ross Campbell held a shotgun to her private," while clarifying that "Ross Campbell didn't rape Angela V. He's not accused of raping Angela V. and he's not charged with that...Daniel Ebron raped Angela V....Ross Campbell is accused of raping Betsey V." (Trial at 1228-29). This same uncharged allegation reached the jury through more than one channel: in addition to the letter and Angela V's own testimony, Detective Tedesco relayed Angela V.'s out of court statement from the lineup that Petitioner "was the guy that held the gun on me" a statement that Angela V. didn't repeat or reference during her own trial testimony and about which she was never cross-examined about. Petitioner was thus never charged with any act against Angela V. including the shotgun conduct described through these several channels. Yet, that uncharged conduct was placed before the jury as part of what the prosecutor twice told the jury was "arguably the most important piece of evidence in this entire trial." (Trial at 1227-28).

By the time of summations, the remaining charges provided no direct framework for the jury to use the Angela V. shotgun allegation as proof of an offense against Angela V.: the weapon count had been dismissed, and Petitioner wasn't charged with an offense against Angela V. No limiting instruction comparable to the court's instruction regarding uncharged marijuana dealing directed the jury how to use this material. Petitioner doesn't contend that the Angela V. evidence automatically to claim impermissible propensity evidence merely because it concerns uncharged conduct. The narrower prejudice point is that an allegation that Petitioner used a shotgun during Angela V. sexual assault created an improper character or propensity reasoning involving separate sex charges against Betsey V., and counsel introduced the letter without redaction or a limiting instruction directed to that risk.

Indeed, the prosecutor's own summation reflects an awareness of the risk that the jury might draw an improper propensity inference from it: the prosecutor told the jury he was "not asking you to say...Daniel Ebron raped Angela V., and therefore, Ross Campbell was a bad guy and he was with him, that he's on the hook too," (Trial at 1229), an ad hoc disclaimer offered by the party benefiting from the evidence, not a limiting instruction from the court, before proceeding to use Angela V. rape to support what the prosecutor called "this broader narrative of the case." (Trial at 1229). The record further reflects that trial counsel's introduction of the letter came as a surprise to Angela V. herself, who "had no

idea that she was going to be seeing this when she took the stand." (Trial at 1227), and that the prosecutor thereafter required Angela V. to read the letter in its entirety during re-direct examination, so that its contents wasn't merely entered as an exhibit but delivered to the jury directly in the complainant's own words. By counsel's own later admission this was introduced into a trial in which, as to the only charged rape count, concerning Betsey V., there was "not one bit of credible evidence that Ross Campbell raped anybody," no testimony describing a rape, no physical evidence and negative DNA results. Counsel repeated this assessment at the §440 hearing, adding: "I can't believe he got convicted." (Hearing at 111).

Counsel's §440 testimony also reveals a tension in the same strategic decision. He testified that he moved for a judgment of acquittal because he believed the proof didn't establish that Petitioner raped Betsey V. Yet, counsel introduced, unredacted, a letter describing Petitioner's alleged use of a shotgun during Angela V.'s separate sexual assault by Daniel Ebron, uncharged conduct that carried an obvious risk of spill-over in a trial involving sexual offenses against Betsey V.

Respondent may answer that the letter was introduced to impeach Angela V. and that counsel didn't intend the jury to use the shotgun allegation as substantive proof of the Betsey V. charges. That is a legitimate distinction in purpose, but it doesn't eliminate the prejudice question. The letter wasn't redacted to remove the uncharged shotgun allegation and no limiting instruction directed the jury to compartmentalize that allegation from the charged sex offenses concerning Betsey V. Petitioner's argument therefore concerning the foreseeable spill-over risk created by the form in which the letter reached the jury, not a claim that the letter literally accused Petitioner of raping Angela V.

Counsel's view that the charged rape lacked adequate proof thus fits in tension not logical contradiction with his decision to place before the same jury unredacted material portraying Petitioner as participating with a shotgun in Angela V.'s separate sexual assault. The two positions can be reconciled as a matter of subjective purpose because counsel may have sought impeachment value. Petitioner relies on the tension only as evidence bearing on whether counsel reasonably addressed the spill-over risk and on the prejudice flowing from the evidence actually placed before the jury.

Detective Tedesco's testimony relaying Betsey V.'s own lineup accusation the statement addressed in Grounds Two and Four also reached the jury without a ruling striking it or a limiting instruction. The resulting prejudice theory is therefore specific: the jury in a single defendant trial heard an uncharged allegation that Petitioner used a shotgun during Angela V.'s, separately, a nontestifying Betsey V. accusation that Daniel Ebron "told the fat kid to rape me." The jury later asked whether the rape and criminal sexual act counts concerned Betsey V. or Angela V. Petitioner doesn't treat the note as truth of improper reasoning; it is contemporaneous evidence that complainant attribution remained unresolved during deliberation, making spill-over a concrete rather than purely an abstract concern.

The trial record confirms that this risk was foreseeable and specifically identified before summations began. At the charge conference trial counsel, sought and received the court's expressed confirmation that the rape count concerned Betsey V. alone and had nothing to do with Angela V., and counsel stated his intentions to make that distinction clear to the jury. In his summation, however, trial counsel did not deliver that clarification. Instead, he argued generally that no forensic evidence tied Petitioner "into any kind of sexual activities with either Betsey V. or Angela V." addressing the two complainants together rather than drawing the very distinction he had obtained the court's permission to draw. Petitioner doesn't ask this Court to find that counsel was constitutionally required to use any particular phrasing, in summation. Petitioner submits only that, the record shows the risk of confusion reflected in the jury's notes was identified in advance, and that counsel's own summation didn't resolve it.

The thinness of the evidence supporting the charged offenses concerning Betsey V. independently illustrates why the Angela V. letter and the Detective Tedesco testimony carried the weight they did. The witness who placed a shotgun in Petitioner's hand and testified that Petitioner directed him to hold Betsey V. at gunpoint was Devon Walsh, a co-defendant who himself pled guilty to unlawful imprisonment of Betsey V. in exchange for his testimony and who testified at trial that he held the gun on Betsey V., and had sex with her, though he characterized that encounter as consensual. Trial counsel argued to the jury that Devon Walsh's own description of events if credited amounted to rape regardless of how Walsh characterized it. Trial counsel also elicited on cross-examination of Angela V., her confirmation that Petitioner never raped her. Trial counsel argued to the jury that no forensic evidence, no DNA, no physical evidence of any kind connected

Petitioner to any sexual offense against Betsey V. or Angela V.

Under New York Law a defendant may not be convicted upon the testimony of an accomplice unless that testimony is corroborated by independent evidence connecting the defendant to the crime, and the jury was so instructed with respect to Devon Walsh's testimony. The corroboration requirement is not satisfied merely by evidence that a crime occurred; it requires evidence tending to connect the particular defendant to its commission. Angela V.'s testimony that she heard Betsey V. "screaming and crying" through a wall, without more, establishes only that something occurred in the room; it doesn't connect Petitioner personally to any element of the charged offenses against Betsey V. Devon Walsh accordingly remains the only witness whose testimony connects Petitioner personally to the conduct underlying the Betsey V. charges. Trial counsel's own testimony at the §440 hearing reflects the same assessment. Asked about the evidentiary value of the Walsh letters, counsel volunteered, unprompt, that Walsh was "the one who raped Betsey V. not Ross Campbell," repeating moments later that Walsh "walked out of the court for raping Betsey v. (Hearing at 111). Whatever weight this Court affords counsel's own continuing assessment of the evidence, it is offered here as further reflection of how thin the properly admitted evidence connecting Petitioner personally to the Betsey V. charges actually was, not as an independent basis for relief.

The prosecutor's own explanation for why the Angela V. letter mattered so much confirms this chain directly. Introducing the letter's account of the shotgun assault against Angela V. the prosecutor told the jury: "this is arguably the most important piece of evidence in this case because this is how you know Angela is telling the truth about everything." The stated purpose wasn't to prove anything about the Betsey V. charges; it was to establish Angela V. general credibility as a witness, so that the jury would credit her testimony generally, including her separate testimony that she heard Betsey V. "screaming and crying." That is precisely the details Respondent's own post-hearing submissions later identifies as the sole corroboration for co-defendant Walsh's account of the Betsey V. charges and precisely the detail Lissete Bonventre directly contradicted, discussed below. The one piece of corroboration Respondent's own submission relies upon to defend this conviction accordingly traces directly back to a credibility bolstering argument built on material that had nothing to do with the Betsey V. charges at all, and that same corroborating detail was independently disputed by another prosecution witness who was present for the same event.

Respondent's own post-hearing submission before the §440 court independently confirmed this same point. Opposing Petitioner's claim regarding the Angela V. letter Respondent stated that "neither Angela V.'s testimony, nor her letter, proved that [Petitioner] raped Betsey V., the crimes defendant was actually charged with," and that, because Angela V.,"was not in the room when Betsey was raped," the value of her testimony was "limited only to her corroboration that she heard Betsey V. screaming and crying in the bedroom," such that "Angela V.'s testimony was not pivotal in proving [Petitioner's] guilt," Respondent's submission goes further identifying the complete universe of evidence it contends supporting the rape conviction: Walsh's testimony, "corroborated by Angela V.'s observations of Betsey V. screaming and crying in the bedroom afterwards." (REXH X at 22). That was the entirety of the evidentiary basis Respondent itself identified. The one detail Respondent offers as corroboration is directly contradicted by another witness who was present in the same apartment. testified on direct-examination that Angela V. emerged from the same room crying, but that when Betsey V. emerged, Betsey V. "came out of the room fairly normal" and went to confront Angela V., who was "still crying." (Trial at 676). On cross-examination, Bonaventre confirmed that she had no knowledge of any rape occurring in house, that nobody was crying for help, that the apartment "was quiet" that night, and that she didn't see Betsey V. crying when she emerged from the bedroom. (Trial at 714). Bonventre further testified that Betsey V. did not say she had been raped (Trial at 714). Respondent's own account of the evidence supporting this conviction accordingly rests on the one corroborating detail that a different prosecution witness, present for the same event, specifically and directly disputed not merely through the absence of a corroborating observation, but through her own affirmative, contrary account of what she saw.

Respondent's post-hearing position may emphasis both the letters strategic value and the limited legal significance of its harmful portions. Those positions aren't formally inconsistent: evidence can be useful for one purpose, yet harmless in another respect. The contrast nevertheless calls for a record specific explanation of why the jury could be expected to receive the impeachment value Respondent attributes to the unredacted letter without also being affective by the uncharged shotgun allegations it contains.

The §440 court's own decision reflects the same difficulty independently. In finding no prejudice from the Angela V. letter, the court reasoned that the

shotgun allegations "prejudiced was minimized" because Angela V.'s claim "was corroborated both by the photos of her naked body found on the cell phone...and the shotgun shells found in the apartment." Neither the photographs, which Ebron took, nor the shell casings, which established only that a shotgun existed somewhere in the apartment, corroborate the specific disputed fact that Petitioner held it. The court further found that Angela V. "was only able to testify that she heard Betsey V. screaming and crying" the same detail Bonventre's testimony discussed above directly contradicts. The decision under review accordingly rests on the same non-corroborating "corroboration" Respondent's own later submission relies upon.

Bonventre's testimony also reveals further gap in the evidence connecting Petitioner personally to the room where the charged conduct occurred. Bonventre, who was present in the apartment throughout, testified that she observed Ebron emerged from the back room, but that she didn't see or Walsh come out of that room and didn't recall them doing so. (Trial at 677). An eyewitness present in the apartment of the relevant events was accordingly unable to corroborate, from her own observation, that Petitioner was even in the room from which the charged conduct was alleged to have occurred.

Taken together, the record shows more than an abstract dispute about case strength. The jury was instructed that rape required penetration, however slight, and that oral conduct required contact between mouth and penis; Walsh's description that Petitioner "started like having sex with her" and "that she did it to Ross too" was not further clarified as to those elements. Petitioner doesn't renew an unexhausted Jackson v. Virginia sufficiency claim. The narrower point is that the properly admitted evidence was less robust than the state court's characterization of "overwhelming" evidence suggests. Trial counsel repeatedly emphasized the absence of forensic evidence and described Walsh as the only credible evidence problem; the prosecutor, meanwhile, called Angela V.'s letter "arguably the most important piece of evidence in this entire trial" because it supposedly establishes Angela V.'a truthfulness, including the screaming and crying detail Respondent later identified as corroboration for Walsh. Walsh's own letters describing police pressure went unused despite counsel's inconsistent justifications. The totality therefore involved one interested witness' imprecise account, disputed corroboration, credibility bolstering material concerning uncharged conduct, and impeachment material the jury never heard.

Whatever the sufficiency of any corroboration ultimately found, the fact that the only witness connecting Petitioner personally to that conduct was an interested accomplice testifying pursuant to a cooperation agreement underscored why the erroneous admission of the Anegela V. letter and Detective Tedesco hearsay was not harmless surplusage. It was introduced into a case that otherwise depended on the credibility of a single, interested accomplice.

Petitioner testified in his own behalf at trial. Asked directly whether he "ever [had] any kind of physical or sexual relations any of those two girls," Petitioner answered, "No, I did not." Asked whether he ever forced them to do any thing, he answered, "No. I said I was sleeping." (Trial at 1090). The prosecutor's cross-examination did not directly confront those denials, although the People's other evidence plainly disputed Petitioner's account. Petitioner's testimony is therefore part of the evidentiary totality, bit it is not described here as unrebutted or as the only first-hand accounts of the events.

The state court addressed the Angela V. letter and Detective Tedesco issues separately. Petitioner does not argue that separate treatment itself violated clearly established federal law. Rather, if the Court independently identifies more than one constitutional deficiency, Strickland's reasonable probability should account for how their practical effects operated against the same evidentiary record. Here, that record included jury uncertainty about complainant attrribution, making the interaction between Angela V. related spill-over and Betsey V.'s out of court accusation relevant to prejudice without creating a freestanding cumulative err claim.

Respondent may similarly urge that the Appellate Division's harmless error finding on direct appeal forecloses the prejudice analysis discussed in this Ground. It doesn't automatically do so. Chapman, Brecht, and Strickland address distinct questions. The state court in this case likewise recognized, when ordering the evidentiary hearing, that harmless error analysis doesn't itself resolve an ineffective assistance claim. Ground Three there fore asks only that Strickland prejudice be assessed under Strickland's own reasonable probability standard against the evidentiary record and, if the Court identifies more than one constitutional deficiency, with attention to any interaction between their effects. Ground Three therefore does not assert an independent constitutional rule requiring aggregation of alleged errors. It supplies the prejudice framework for any deficiencies independently established in Grounds One and Two; Strickland requires assessment against the totality of the evidence before the jury, and the

practical interaction of multiple established deficiencies may bear on whether their effects create a reasonable probability sufficient to undermine in the outcome.

C. Conclusion

Ground Three doesn't expand the ineffective assistance claims or ask this Court to recognize a freestanding cumulative error doctrine. It asks the Court to apply Strickland's own prejudice rule to the total evidentiary record and, if more than one deficiency is established to consider their practical interaction under the reasonable probability standard.

Grounds One and Two concern different stages of the same trial. Petitioner submits that the state court's segmented analysis didn't adequately account for their effect in a case dependent heavily on Walsh's credibility and marked by the Angela V. letter, Detective Tedesco accusation, and the jury's contemporaneous uncertainty over complainant attribution. Ground Four separately addresses Crawford and the federal harmless error standards.

## GROUND FOUR

**The admission of a testimonial accusation from a non-testifying complainant violated the Confrontation Clause, and Petitioner contends that the State Court's Harmless-Error adjudication does not withstand review under 28 U.S.C. § 2254(d), or the governing Federal Habeas Standards.**

**A. The State Court's Harmless-Error Adjudication**

Unlike the ineffective-assistance claims presented in the above Grounds, Ground Four concerns an independent constitutional claim arising under the Confrontation Clause of the Sixth Amendment.

The concern this Ground raises isn't one which simply derives from subsequent litigation. In fact, Petitioner at his November 23, 2010, Sentencing personally addressed the Court stating: "In regards to Betsy V., I never had my right to cross-examine or face my [accuser]..." (Sentencing Tr. at 12). This came before any appeal had been taken and years before the CPL §440.10 proceedings took place. Petitioner doesn't raise this as a legal argument in itself, but because it illuminates that the constitutional concern at issue in this Ground was one that Petitioner recognized and articulated, in his own words, at his earliest opportunity to personally address the Court following his conviction.

Interestingly, the sentencing court independently made the same observation on the same record. This is reflected in Justice Marcus' subsequent decision quoting the Sentencing Transcript where the Court stated: "We hadn't heard from [Betsy V.], that it was proven that you raped... Her whereabouts seemed to be unknown." (Sentencing Tr. at 15, Lns 5-8). It is notable that the sentencing court itself

recognized, on the day of sentencing, that Betsy V. had never been heard from directly, because it's independent confirmation, from the Court that presided over the entire trial, of the same constitutional gap which this Ground addresses. Neither, Petitioner's statement, nor the Court's own observation resolves the legal question presented. However, both confirm the absence of any opportunity to confront Betsy V. was apparent to all participants of the proceedings from the outset, including the Court, counsel, the prosecution, and even Petitioner, and was not a theory developed in later collateral litigation.

The Appellate Division expressly recognized that "a reference to an identification by a nontestifying victim should have been exlu People v. Campbell, 131 A.D.3d 882. As used throughout this Ground, testimonial accusation refers specifically to Betsy V.'s statement implicating Petitioner, "that's the one who told the fat kid to rape me," and not to the separate identification of co-defendant Daniel Ebron, which is not independently at issue here. Accordingly, the federal dispute concerns whether that error withstands review under the governing harmless-error standards applicable on habeas review. The Court nevertheless concluded that the error was harmless beyond a reasonable doubt and affirmed Petitioner's conviction. Petitioner doesn't dispute that harmless-error review applies to Confrontation Clause violations, nor does he contend that every violation of Crawford automatically warrants habeas relief. However, the question presented under 28 U.S.C. §2254(d) is whether the state court reasonably applied the governing harmless-error principles to the particular record developed at Petitioner's trial.

Thus, the inquiry necessarily requires consideration of both

the nature of the improperly admitted testimonial accusation and the objective evidence bearing upon its possible effect on the jury's deliberations. The issue before this court is not whether some evidence independent of the challenged testimony supported the verdict. Instead, the question is whether the state court reasonably concluded that admission of the testimonial accusation was harmless when evaluated under the constitutional standards governing federal habeas review.

**B. The State Court's Preservation Ruling Doesn't Bar Review, Because Petitioner Establishes Cause and Prejudice**

On direct appeal, the Appellate Division held: "Defendant did not preserve his Confrontation Clause and related arguments concerning events that occurred during lineups, and we decline to review them in the interest of justice. As an alternative holding, we find that although a reference to an identification by a nontestifying victim should have been excluded, the error was harmless beyond a reasonable doubt...in light of the overwhelming evidence of guilt and the fact that identity was not a fundamental issue in the case." People v. Campbell, 131 A.D.3d 882 (1st Dept. 2015) citing, People v. Eastman, 85 N.Y.2d 265, 276-78 (1995). The Appellate Division found Petitioner's Confrontation Clause objection unpreserved under New York's contemporaneous-objection rule, and declined to review the claim as of right, reaching the question only in the interest of justice. Having done this, the court held in the alternative that admission of the accusation was harmless beyond a reasonable doubt.

Ordinarily, a state court's finding that a federal claim is unpreserved constitutes an independent and adequate state ground

barring federal habeas review of that claim. Coleman v. Thompson, 501 U.S. 722, 729-730 (1991); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977). Neither does a state court's decision to reach the merits in the alternative, after clearly and expressly invoking a state procedural bar, disturb that bar's adequacy or independence. Harris v. Reed, 489 U.S. 255, 264 n.10 (1989). Petitioner does not ask this Court to treat the Appellate Division's preservation ruling as ambiguous, or infer that the Court's judgment rested primarily on federal law. The Appellate Division's invocation of the state procedural bar was clear, and its harmless-error discussion was, as the court itself stated, an alternative holding.

Accordingly, federal review of Ground Four's Confrontation Clause claim requires that Petitioner establish cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 485 (1986).

Petitioner establishes cause. Constitutionally ineffective assistance of counsel in failing to preserve a federal claim can itself constitute cause excusing a procedural default, provided that the ineffective-assistance claim was itself separately presented to the state courts as an independent constitutional claim. Murray v. Carrier, 477 U.S. 478, 488-489; Edwards v. Carpenter, 529 U.S. 446, 451-452 (2000). Respectfully, that requirement is satisfied here. Ground Two of this Reply presents, and Petitioner exhausted through the CPL §440.10 proceedings, an independent Sixth Amendment claim that trial counsel was constitutionally ineffective for failing to lodge and preserve an adequate objection to the very testimonial

accusation at issue in this Ground.

As discussed in Ground Two, counsel himself testified at the §440 hearing that he recognized this testimony as raising both a hearsay and a Confrontation Clause concern at the time it was elicited, yet he did not articulate those specific grounds. Respondent's own Post-Hearing submission preserves and highlights when counsel represented to the Court that he would address this exact testimonial accusation: "Det. Tedesco: I believe she said that that's the one who told the fat kid to me. Mr. Garafola: Note my objection, Judge. I'll take that on cross-examination. The Court: Yes, you may inquire of the witness as to any circumstances surrounding that lineup." (REXH X at 26). Counsel was therefore expressly granted the opening, which he himself requested, and record, however, does not reflect that he ever returned to the specific accusation which he told the Court he would address. Thus, the default of the underlying Confrontation Clause claim is therefore directly attributable to the same deficient performance challenged in Ground Two.

A failure to preserve an objection counsel has himself he recognized was available cannot be viewed as a strategic choice, or forfeiture attributable to Petitioner. Respondent's Memorandum of Law addresses only whether Petitioner's 2021 application for a Writ of Error Coram Nobis, alleging ineffective assistance of appellate counsel, can serve as cause for this default. However, it neither addresses nor offers no argument in response to, the distinct trial-counsel-based cause theory presented here. The cause and prejudice showing made here rests entirely on trial counsel's performance, which was litigated and exhausted through the CPL §440.10

proceedings resulting in an evidentiary hearing, and is distinct from any claim that appellate counsel rendered ineffective assistance. Further, Petitioner does not rely on, and this Ground doesn't require resolution of, any claim concerning the performance of counsel who represented Petitioner on direct appeal, or in connection with any subsequent application for further appellate review. The requirements derived from Edwards v. Carpenter, 529 U.S. 446, that an ineffective assistance claim serving as cause must itself be exhausted is satisfied by the trial level Sixth Amendment claim presented in Ground Two, which was fully litigated at an evidentiary hearing and reviewed by the Appellate Division on the merits. Thus, no further exhaustion inquiry beyond that already undertaken with respect to Ground Two is necessary to establish cause for the default of Ground Four. The causing showing required here is narrower than, and doesn't depend upon, this Court granting relief on Ground Two in its entirety. Murray v. Carrier, requires only that, counsel's performance in failing to preserve the claim be constitutionally deficient. And, it doesn't require an independent showing that the deficiency itself caused prejudice to the trial verdict, which is a separate element of Strickland relief that Ground Two must establish on its own terms. Indeed, the deficient performance showing set forth in Ground Two, that counsel recognized the hearsay and Confrontation Clause problem and articulated no strategic reason for failing to preserve it, is sufficient by itself to establish cause for this Ground. This, respectfully, is so regardless of whether this Court ultimately agrees that Ground Two's own showing of trial verdict prejudice independently warrants relief.

Accordingly, Ground Four doesn't stand or fall with Ground Two because it presents an independent constitutional violation, subject to its own prejudice standard under Brecht, which this Court may address once cause is established through the deficient performance showing alone.

Petitioner also establishes prejudice. The prejudice required to excuse a procedural default under Coleman and Murray is analyzed under the same standard applicable to the underlying constitutional claim on habeas review. See, Brecht v. Abrahamson, 507 U.S. 619 (1993). As set forth in Sections D through F below, the improperly admitted testimonial accusation, considered together with the jury's own contemporaneous requests during deliberations, had a substantial and injurious effect or influence on the verdict. The showing of prejudice required to excuse the procedural default and the showing of prejudice required to obtain relief under Brecht therefore rests upon the same record.

Ground Four doesn't ask this Court to disregard the Appellate Division's preservation ruling or to treat New York's contemporaneous objection rule as inadequate in the abstract. On the contrary, Petitioner submits that the default is excused because it was itself the product of constitutionally deficient performance challenged in Ground Two, and because the resulting prejudice is established by the record below.

C. Governing Supreme Court Standards

The Sixth Amendment guarantees an accused the right "to be confronted with the witnesses against him."

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that testimonial statements made by a witness who does

not appear at trial are inadmissible unless the witness is unavailable and the defendant previously had an opportunity for cross-examination. The admission of testimonial hearsay was rejected by Crawford based solely upon judicial assessments of reliability, and reaffirmed that confrontation is the constitutional procedure required before such evidence may be presented to the jury. However, the existence of a Confrontation Clause violation doesn't automatically require reversal. On direct review, constitutional trial error is evaluated under Chapman v. California, 386 U.S. 18 (1967), which asks whether the State has demonstrated that the error was harmless beyond a reasonable doubt.

Here, the Appellate Division applied that standard. On Federal habeas review, however, the controlling standard isn't Chapman, but rather the standard announced in Brecht v. Abrahamson, even where, as here, the state court itself applied Chapman. See, Fry v. Pliler, 551 U.S. 112, 121-122 (2007). Therefore, Petitioner addresses the Appellate Divison's Chapman determination only as part of the reasonableness inquiry required by 28 U.S.C. §2254(d), while recognizing that Brecht, not Chapman, supplies the standard governing the ultimate harmless-error question on federal habeas review.

Under Brecht, the question is whether the constitutional error had a substantial and injurious effect or influence in determining the jury's verdict. However, under Brown v. Davenport, 596 U.S. 118, 134 (2022), a federal habeas petitioner must satisfy both AEDPA's requirements and the applicable federal harmless-error inquiry before relief may be granted.

Ground Four present three related but distinct questions. First, whether Det. Tedesco's testimony conveyed testimonial accusation evidence prohibited by Crawford? Second, whether the state court reasonably concluded under AEDPA that admission of the challenged testimony was harmless? Lastly, whether the error had a substantial and injurious effect or influence on the verdict under Brecht?

D. The Contemporaneous Trial Record

The constitutional claim presented in Ground Four must be evaluated against the trial record instead of through post-verdict speculation concerning the probable effect of the challenged testimony. Because, the record developed before the jury is central to the harmless-error inquiry.

During the People's case, Det. Tedesco testified concerning a police lineup involving non-testifying complainant Betsy V. In addition to recounting Betsy V.'s identification of co-defendant Daniel Ebron, Det. Tedesco, when asked by the Court, related an additional statement attributed to Betsy V.: "That's **the one who told the fat kid to rape me.**" Therefore, the jury heard a testimonial accusation attributed to Betsy V. despite her not testifying and not being subject to cross-examination.

The significance of the contemporaneous record did not end with Det. Tedesco's testimony. Because, during deliberations, the jury sent out multiple notes. One note stated they "need to review evidence of rape in the first degree and criminal sexual act in the first degree," and sought clarification regarding those crimes asking "is this in relation to Betsy and Angela?" (Trial: 1261-1262). Additionally, the jury requested "clarification of evidence for count 5, Kidnapping in the second degree," and also asked "who was kidnapped?" They also requested for the Court to "please provide police lineup pictures for both Ross Campbell and Daniel Ebron." (Trial: 1262-1263). In addition to abovementioned requests by the jury, they also requested other evidence and a read back of co-defendant Walsh's testimony (Trial: 1261-1277).

To be clear, Petitioner does not rely upon these jury notes to speculate regarding the jury's internal deliberative process, or to infer as to the subjective reasoning of any individual juror. Rather, Petitioner simply submits that the notes constitute objective portions of the trial record which demonstrate the issues which the deliberating jury itself identified as requiring additional clarification before reaching its verdict. After all, the jury notes provide stronger evidence of what mattered during their deliberations as opposed to any characterizations offered years later by appellate courts.

The challenged testimonial accusation and the jury's contemporaneous requests, therefore concern the same general subject matter: the identity of the individuals involved, the attribution of the charged offenses, and the evidentiary basis for the sex offense counts submitted to the jury.

The record relevant to harmless-error review consists not only of the challenged testimony itself, but also of the objective evidence generated during deliberations, reflecting the issues which the jury sought additional guidance from the court.

**E. Why the Petitioner Contends the State Court's Harmless-error Analysis Was Unreasonable**

Petitioner does not dispute that constitutional trial error may, in appropriate circumstances, be harmless. Neither does Petitioner contend that every Confrontation Clause violation requires reversal. The question presented under 28 U.S.C. §2254(d) is narrower. The question is whether the Appellate Division reasonably applied the governing harmless-error principles to the particular trial record developed in the case.

Respondent's brief asserts that the Appellate Division's harmless-error determination is "unassailable" and the "[w]here the state court correctly determined that the statement was harmless beyond a reasonable doubt, it follows that the statement did not have a substantial and injurious effect at trial that would warrant relief on habeas review." (State's MOL at 60).

As a general matter, Petitioner does not dispute that a correct finding of harmlessness beyond a reasonable doubt under Chapman would satisfy the less demanding Brecht standard as well, since Chapman asks more of the state than Brecht. See, Fry v. Pliler, 551 U.S. 112, 121-122 (2007). However, the difficulty with Respondent's argument isn't that it links the two standards; instead, it is that it treats the correctness of the underlying Chapman determination as an established premise rather than, the disputed question for

which it actually is.

Respectfully, whether the Appellate Division reasonably applied Chapman to this record is precisely what §2254(d) requires this Court to evaluate. Respondent's brief does not defence that determination against the objective record discussed below. Simply, it assumes the determination was correct and reasons forward from that very assumption. However, describing a conclusion as "unassailable" is not a substitute for showing that it withstands the analysis §2254(d) actually requires.

Although the Appellate Division concluded that admission of Betsy V.'s testimonial accusation was harmless beyond a reasonable doubt, Petitioner respectfully submits, this conclusion did not adequately account for objective portions of the contemporaneous record bearing upon the possible effect of the challenged testimony.

As previously discussed above, the heard Det. Tedesco relate a testimonial accusation attributed to a complainant who didn't testify and, therefore was not subject to cross-examination. During deliberations, the jury subsequently requested clarification regarding the rape and criminal sexual act counts, sought clarification concerning whether particular counts pertained to Betsy V. or Angela V., requested lineup photographs, and sought additional guidance concerning the evidence related to the charged offenses. (Trial: 1261-1277).

Again, Petitioner doesn't rely upon these jury requests to speculate regarding the jury's subjective reasoning or to reconstruct the deliberative process. On the contrary, the requests constitute objective record evidence demonstrating that the

deliberating jury itself identified these subjects as requiring additional clarification before reaching its verdict.

The harmless-error inquiry should take into account the jury's own contemporaneous requests together with the challenged testimonial accusation. Because, the issue is not whether the jury necessarily relied upon the improperly admitted statement, but whether the objective trial record reasonably supports the conclusion that its admission was harmless beyond a reasonable doubt.

For those reasons, the Appellate Division's harmless-error determination involved an unreasonable application of clearly established Supreme Court precedent with the meaning of 28 U.S.C. §2254(d)(1). To the extent that adjudication failed to reasonably account for objective evidence contained in the trial record, Petitioner further submits that relief is warranted under §2254(d)(2).

**F. Prejudice Under Brecht**

Even where a petitioner establishes constitutional error, federal habeas relief requires a further showing that the error had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619 (1993). The inquiry is not whether the remaining evidence was legally sufficient to support the conviction, but whether the constitutional error substantially influenced the verdict or leave the reviewing court in grave doubt as to its effect.

This standard is satisfied here.

The challenged testimony was not cumulative of testimony subjected to cross-examination. Rather, Det. Tedesco conveyed to the

jury a testimonial accusation attributed to Betsy V. a non-testifying complainant, whose accusation therefore couldn't be tested through confrontation.

Although, Respondent characterizes the challenged testimony as directed primarily at identifying co-defendant Daniel Ebron, with any reference to Petitioner being incidental to that identification, Petitioner respectfully submits the statement's own content doesn't support that characterization. Besty V.'s accusation "that's the one who told the fat kid to rape me" doesn't merely identify Ebron by pointing him out; in the same breath, it attributes Petitioner as being the "fat kid" who she alleges raped her. Therefore, the statement isn't properly characterized as identification testimony that happens to mention Petitioner in passing. Instead, it is a substantive accusation naming Petitioner's role in the charged conduct, conveyed through an out-of-court declarant who was never subjected to cross-examination on that accusation specifically. Accordingly, its significance to the Brecht inquiry cannot be discounted on the theory that its function was primarily to identify someone other than Petitioner.

The significance of that testimony is evaluated in light of the entire trial record. Most notably, during deliberations the jury requested clarification regarding the rape and criminal sexual act counts, sought clarification concerning whether particular counts related Betsy V. or Angela V., requested lineup photographs involving Petitioner and co-defendant Daniel Ebron, and requested additional guidance concerning evidence supporting the charged offenses. Again, Petitioner doesn't contend that these jury requests establish that the challenged testimonial accusation determined the

verdict. Petitioner neither, invites speculation concerning the subjective reasoning of individual jurors. Rather, the jury's contemporaneous requests constitute objective record evidence demonstrating that the matters implicated by the improperly admitted testimony remained active subjects of deliberation.

When considered together, the improperly admitted testimonial accusation and the jury's own contemporaneous requests provide a record materially different from one in which the challenged evidence was merely cumulative, or plainly insignificant. They demonstrate that the deliberating jury sought additional guidance concerning issues closely related to the evidence affected by the constitutional error.

The Brecht inquiry is further informed by the strength, or weakness, of the properly admitted evidence supporting the charged offenses Betsy V., as discussed more fully in Ground Three above. No physical or forensic evidence connected Petitioner to any sexual offense against Betsy V. The only witness who described Petitioner's own conduct toward her was Devon Walsh, a co-defendant who was originally charged with rape in the first degree and resolved his own exposure through a plea to a single count of unlawful imprisonment in exchange for his testimony.

Trial counsel argued to the jury that no forensic evidence connected Petitioner to any sexual offense against Betsy V. or Angela V., and Petitioner's own testimony denying any physical or sexual contact with either complainant went unchallenged on cross-examination.

A constitutional error is less likely to be harmless where, as

here, the remaining evidence supporting the verdict depends so heavily on a single interested witness. The improperly admitted testimonial accusation did not merely supplement an otherwise solid evidentiary foundation; instead, it reached a jury already required to resolve the case principally on the credibility of one accomplice testifying pursuant to a Cooperation Agreement.

Respondent's own Post-Hearing Submission in the §440 proceedings confirms the same thinness. While opposing Petitioner's claim regarding the Angela V. letter, Respondent stated that Angela V.'s testimony "was not pivotal in proving [Petitioner's] guilt," and identified the complete evidentiary basis for the rape conviction as co-defendent Walsh's testimony, "corroborated by Angela V.'s observations of Betsy V. screaming and crying in the bedroom." (REXH X at 22). In fact, that single corroborating detail was undercut by the testimony of co-defendant Lissette Bonaventure, another witness present in the apartment, who testified that the apartment was quiet, that nobody was crying for help, and the Betsy V. emerged from the room "fairly normal" as opposed to crying, as discussed more fully in Ground Three above (Trial: 714). The properly admitted evidence Brecht requires this Court to weigh against the constitutional error is accordingly thinner than even Respondent's own characterization suggests, once that characterization is measured against the record Respondent relies upon.

Respectfully, the §440 Court's own assessment of the cases strength is similar to the Respondent's, specifically, its finding that the People's case at trial was strong cites to the same shotgun shells as corroboration for the presence of shotgun generally,

without addressing whether that evidence connects to the specific conduct the Betsy V. charges require. The constitutional violation cannot be dismissed as having had no meaningful influence upon the verdict.

At minimum, the contemporaneous record raises substantial doubt regarding the effect of the improperly admitted testimonial accusation upon the jury's deliberations. When a federal habeas court is left in 'grave doubt' about whether constitutional error substantially influenced the verdict, the uncertainty is resolved in the Petitioner's favor. See, O'neal v. McAninch, 513 U.S. 432 (1995). Under Brecht and O'neal, the record does not permit confidence that the constitutional error was harmless.

For these reasons, the Confrontation Clause violation had a substantial and injurious effect or influence on the verdict within the meaning of Brecht.

G. Conclusion

The harmless-error adjudication must be measured against the actual trial record: a nontestifying complainant's testimonial accusation, a jury that requested clarification about the sexual-offense counts and complainant attribution, and comparatively thin independent proof concerning the Betsey V. charges.

For those reasons, Petitioner submits that the Appellate Division's harmless-error adjudication was unreasonable under §2254(d) and that the Crawford error had a substantial and injurious effect or influence under Brecht.

## CERTIFICATE OF APPEALABILITY

Should this Court deny the Petitione, Petitioner respectfully requests that a Certificate of Appealability issue pursuant to 28 U.S.C. §2253(c).

A Certificate of Appealability should issue where reasonable jurist could debate whether the Petition states a valid claim of the denial of a constitutional right or whether the issues presented deserve encouragement to proceed further. See, Slack v. McDaniel, 529 U.S. 473, 484 (2000); Miller-El v. Cockrell, 537 U.S. 322, 336-338) (2003). This case presents constitutional questions that reasonable jurists could debate.

First, reasonable jurists could debate whether the state court reasonably applied Strickland, Wiggins, and Rompilla when it deferred to counsel's handling of Mauline F. despite the undeveloped voir dire record and counsel's stated credibility rationale. Miller v. Webb remains persuasive illustration only, not clearly established federal law under AEDPA. The New York Court of Appeals oral argument is cited only as illustration that jurists of reason have debated the absence of inquiry and asserted strategy.

Second, reasonable jurists could debate whether the state court reasonably applied Strickland to counsel's handling of Detective Tedesco's testimony concerning a testimonial accusation attributed to a nontestifying complainant.

Third, reasonable jurists could debate how Strickland's totality of the evidence requirement applies to the prejudice inquiry if the Court independently finds more than one instance of deficient performance, including whether the practical interaction of established deficiencies bears on the reasonable probability analysis without recognizing a freestanding cumulative error claim.

Finally, reasonable jurists could debate whether the Appellate Division reasonably concluded that admission of testimonial accusation was harmless under the governing standards applicable to federal habeas review, including Crawford v. Washington, Chapman v. California, Brown v. Davenport, and Brecht v. Abrahamson, and whether Petitioner has established cause and prejudice sufficient to excuse the state court's preservation ruling under Colemane v. Thompson and Murray v. Carrier.

## CONCLUSION

This Reply doesn't ask the Court to retry Petitioner's criminal case, reweigh credibility, or treat every challenged act as independently dispositive. It asks the questions prescribed by §2254(d): whether the state court adjudications unreasonably applied clearly established Supreme Court precedent, or where applicable, rested on unreasonable factual determinations.

Measured against the contemporaneous record, Petitioner submits that the state court unreasonably deferred to counsel's handling of Mauline F. and Detective Tedesco's testimony, failed to assess Strickland prejudice against the totality of the evidence, and unreasonably treated the admission of Betsey V.'s testimonial accusation as harmless. The record, rather than post hoc reconstruction, supplies the framework for those questions.

Petitioner respectfully submits that the Court grant the Petition and such relief as federal law authorizes. If relief is denied, Petitioner requests a Certificate of Appealability under 28 U.S.C. §2253(c), because the constitutional questions presented are reasonably debatable among jurists of reason.

Dated: August 13, 2026

Respectfully submitted,

[signature]

ROSS CAMPBELL,
Petitioner, pro se
594 Route 216
Stormville, NY 12582

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
)ss.:
COUNTY OF DUTCHESS )

ROSS CAMPBELL, being duly sworn, deposes and says:

I am the above-mentioned defendant/appellant and I have served a copy of the following papers:

LETTER NOTIFYING BRONX COUNTY A.D.A. DIANA J. LEWIS, ESQ. THAT HER OPPOSITION TO MY WRIT OF ERROR CORAM NOBIS WAS NOT RECEIVED, AND NOTICE OF ENTRY NOT SERVED UPON ME EITHER.

Upon the following:

Diana J. Lewis
ASSISTANT DISTRICT ATTORNEY, BRONX COUNTY
198 E. 161st Street
Bronx, NY 10451

By placing the above in a post-paid envelope and depositing it in a United States Postal Service mailbox located at Green Haven Correctional Facility, Stormville, New York on the 12 day of October, 2022, as due and sufficient service.

Ross Campbell
ROSS CAMPBELL

SWORN TO BEFORE ME THIS
12 day of October, 2022.

NOTARY PUBLIC

NICHOLAS M. ANTHONY
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01AN6436907
Qualified In Dutchess County
Commission Expires July 25, 2026

TO: Diana J. Lewis
Assistant District Attorney, Bronx County
198 E. 161st Street
Bronx, NY 10451

FROM: Ross Campbell
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582

DATE: October 12, 2022

Re: PEOPLE v. CAMPBELL(ROSS)
Bronx Co. Ind. No. 2308/08
Appellate Docket No. 2010-02905

Dear Ms. Lewis:

The Deputy Clerk of the Supreme Court Appellate Division, First Department has informed me that, my motion for Writ of Error Coram Nobis, was decided on March 1, 2022. However, I did not receive a copy of your Opposition to my motion, nor have I received an Affidavit of Service showing that I was served papers in opposition. Lastly, your office has not served me with a copy of the Notice of Entry, if any.

The facility "Legal Mail Log Book" will show that I have not received legal mail from your office with respect to this matter. Please provide me with these documents so that I may file a timely appeal. With all good wishes,

Gratefully your's,

Ross Campbell

Ross Campbell

cc: file

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
)ss.:
COUNTY OF DUTCHESS )

ROSS CAMPBELL, being duly sworn, deposes and says:

I am the above-mentioned defendant/appellant and I have served a copy of the following papers:

Letter to Hon. Lawrence K. Marks, Chief Administratice Law Judge in regard to breakdown in process regarding a Writ of Error Coram Nobis filed with the Appellate Division First Department (App. Dkt. No.: 2010-02905).

Upon the following:

Hon. Lawrence K. Marks
CHIEF ADMINISTRATIVE LAW JUDGE
25 Beaver Street
New York, NY 10004

By placing the above in a post-paid envelope and depositing it in a United States Postal Service mailbox located at Green Haven Correctional Facility, Stormville, New York on the 12 day of October, 2022, as due and sufficient service.

ROSS CAMPBELL

SWORN TO BEFORE ME THIS
12 day of October, 2022.

NOTARY PUBLIC

NICHOLAS M. ANTHONY
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01AN6436907
Qualified in Dutchess County
Commission Expires July 25, 2026

TO: Hon. Lawrence K. Marks
CHIEF ADMINISTRATIVE LAW JUDGE
25 Beaver Street
New York, NY 10004

FROM: Ross Campbell
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582

Date: October 12 , 2022

Re: <u>PEOPLE v. CAMPBELL(ROSS)</u>
Indictment No.: 2308/08
Appellate Docket No.: 2010-02905

Dear Hon. Marks:

There has been a breakdown in process in my case which needs to be looked into. In a letter dated September 28, 2022, the Deputy Clerk of the Supreme Court Appellate Division, First Department, informed me that my motion for a Writ of Error Coram Nobis, was denied on March 1, 2022 (See, Deputy Clerk's Letter, attached hereto).

I did not receive a copy of the Court's decision denying my motion, nor have I received a copy of the Notice of Entry, the People's Opposition to my motion, and I was not served with a copy of the Affidavit of Service. Because I have not received the People's Opposition to my motion I was unable to reply to their opposition.

Again, I don't know where the breakdown in process occurred, but I was denied the right to reply to the People's Opposition to my motion. Moreover, I was denied the ability to appeal the Court's decision in a timely fashion. Therefore, I feel that the Court's decision should be recalled so that I may reply to the People's Opposition. Consequently I should be able to appeal the Court's decision upon receiving said decision because I have not received it or the Notice of Entry.

It is respectfully requested that a rule be implemented to require the People to always file an Affidavit of Service with the Court to ensure that they have served a defendant with their opposition papers. The Deputy Clerk's letter informs me to contact the District Attorney's Office for the date of service of their opposition which was sent to me from their office. This suggests that the Court also does not have the District Attorney's date of service. The Green Haven Correctional Facility "Legal Mail Log Book" would show that I have not

received the District Attorney's opposition or the Court's decision.

Therefore, I would like to know what will be done to ensure that this breakdown will not occur again, and what can be done about the failure to allow me to file a reply to the People's opposition to my motion, and to file an appeal in a timely fashion? I patiently await your prompt response. With all good wishes,

Very truly your's,

Ross Campbell

cc: file

Encl. (1)

ROSS CAMPBELL
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582

August 22 , 2022

VIA FIRST-CLASS MAIL

Lawrence E. Giannetta
Post Master General
7 Old Route 52
Stormville, New York 12582

Re: Lost and/or Stolen Mail

Dear Mr. Giannetta:

I write this letter because I believe that mail addressed to me has either been lost and/or stolen.

The letter and/or parcel(s) of concern are as follows:

1) From: OFFICE OF THE DISTRICT ATTORNEY
BRONX COUNTY
BRONX, N.Y. 10451
ADA D. Lewis

* presumably postmarked 1/17/2022

To: Ross Campbell
DIN 10-A-5644
Green Haven Correctional Facility
594 Rt. 216
Stormville, New York 12582-0010

2) From: SUPREME COURT
APPELLATE DIVISION
FIRST DEPARTMENT
27 MADISON AVENUE
New York, N.Y. 10010

To: ROSS CAMPBELL (10-A-5644)
GREEN HAVEN CORR. FAC.
P.O. BOX 4000
STORMVILLE, NY 12582-4000

The postmark date of the last correspondence that I received from the first address was January 3, 2022, and the postmark date of the last correspondence that I received from the second address was September 27, 2021. As of today August 22, 2022, I have not received any mail from either of the two addresses.

Therefore, I respectfully request that you provide me with information verifying,whether or not,any mail has been sent to me from either of the two addresses since the last two postmark dates(?)

Thanks in advance for your time, energy, and concern in regards to this matter. I patiently await your response. With all good wishes,

Respectfully submitted,

Ross Campbell

Ross Campbell

I, Ross Campbell, declare under penalty of perjury that the foregoing is true, correct, and complete and that this letter is not written with malice, nor with the intent to mislead and/or deceive.

ROSS CAMPBELL
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582

September 16, 2022

VIA FIRST-CLASS MAIL

Lawrence E. Giannetta
POST MASTER GENERAL
7 Old Route 52
Stormville, New York 12582

Re: Lost and/or Stolen Mail

Dear Post Master General:

I am writing in regards to a letter that I sent to you on August 22, 2022 concerning Lost and/or Stolen Mail (see the enclosed letter originally sent).

Please let me know what the status is of my request. If I have written you in error then please refer me to the agency and/or person that I should write in order to resolve this matter.

Thank you in advance for you time, efforts, and concern in regards to this matter. I look forward to your prompt response. With all good wishes,

Respectfully submitted,

Ross Campbell

Ross Campbell

cc: file
Encl. Original Letter dated 8/22/22

# CERTIFICATE OF SERVICE

I, ROSS CAMPBELL, hereby certify that on this 13th day of August, 2026, that I have caused a copy of the foregoing and a True, correct, and complete Original of the foregoing: REPLY to the State's Answer and Memorandum of Law Opposing Petitioner's Petition For a Writ of Habeas Corpus, upon:

[ORIGINAL]

Attn: Hon. John G. Koeltl, USDJ
C/O CLERK OF COURT
United States District Court
Southern District of New York
U.S. Courthouse
500 Pearl Street
New York, NY 10007

[COPY]

Hon. Darcel D. Clark,
District Attorney, Bronx County
OFFICE OF THE DISTRICT ATTORNEY
198 East 161st Street
Bronx, NY 10451

by placing the above in a post-paid envelope and depositing it in a United States Postal Service Mailbox located at Green Haven Correctional Facility, Stormville, NY 12582, for prompt processing and mailing by authorized prison personnel, and it shall be deemed FILED as of the above date, per the federal "mailbox rule." Houston v. Lack, 487 U.S. 266, 270 (1988).

[signature]
ROSS CAMPBELL,
Petitioner, pro se

# Supreme Court of the State of New York
# Appellate Division, First Department

DIANNE T. RENWICK
PRESIDING JUSTICE

SUSANNA MOLINA ROJAS
CLERK OF THE COURT

MARGARET SOWAH
DEPUTY CLERK OF THE COURT

DOUGLAS SULLIVAN
DEPUTY CLERK OF THE COURT

January 04, 2024

To: BxCoDA

J.I. EDELSTEIN, ESQ.

---

**PEOPLE V ROSS CAMPBELL**

Index No.: 2308/2008

Date of Judgement/Order: 11/13/2023

---

A pro se motion has been added to the calendar of 2/5/2024. This motion seeks:

Consolidate Appeals
Counsel - Assign
Leave to Appeal - CPL 460.15
Poor Person Relief

CONFIDENTIAL

RK

CLERK'S OFFICE

ROSS CAMPBELL
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582

March 29, 2024

VIA FIRST-CLASS MAIL

Hon. Susanna M. Rojas,
CLERK OF THE COURT
Appellate Division, First Dept.
27 Madison Avenue
NY, NY 10010

Re: People v. CAMPBELL(ROSS)
Bronx Co. Ind. No. 2308-08

Dear Madam:

I hope that this letter finds your well. My purpose for writing is to request an update in regards to a Leave Application that I filed Pro Se in this Court on December 12, 2023. I have not received anything from the Court regarding this motion. Please let me know what is the status of the motion.

Thank you in advance for your time and consideration in regards to this matter. With all good wishes,

Respectfully submitted,

Ross Campbell

ROSS CAMPBELL

CC: File